WILLARD G. WAYMAN, Appellant, v. WILLIAM D. TORREYSON, Respondent.

Note Void for Want of Stamps. Where Torreyson made a promissory note to Mrs. Wayman, which was not stamped, and after her death, at the request of her administrator, Torreyson affixed a stamp : *Held*, that the note was invalid for want of a stamp in the hands of Mrs. Wayman ; that it could not be redelivered after her death as a new note for want of a payee ; and the omitted stamps could be affixed so as to validate it as an old note only by a revenue stamp affixed in accordance with the Act of Congress of March 3, 1865.

Maynard v. Johnson, 2 Nev. 16, to the effect, that under the Act of Congress of June 30, 1864, (previous to the amendment of March 3, 1865) the omission to stamp a promissory note when executed, even though such omission was without fraudulent intent, rendered it invalid, approved.

Promissory Note, Existence of Parties. There must be two parties to every promissory note, a maker and a payee ; if the payee named is not *in esse*, there is no note.

Note Payable to Fictitious Payee. The doctrine of *Foster* v. *Shattuck*, (2 New Hampshire, 448) that a note made to a fictitious payee or order, may be sued on by the person to whom delivered, as if made payable to bearer, is not borne out by authority nor correct in principle.

Suit on Original Consideration of Void Note—Pleadings. Though the holder of a promissory note, which proves to be void, may, in a proper case, recover on the consideration for which the note was intended to be given, he cannot do so unless the pleadings set out such consideration.

By Beatty, C. J., Query. If a promissory note be delivered unstamped, and afterwards the maker affixes a stamp, may it not take effect as a new and good note from the last delivery ?

Appeal from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion of the Court.

Wayman *v.* Torreyson.

*Ellis and Sawyer,* for Appellant.

### I.

Invalidity for want of a stamp must appear on the face of a promissory note, and if the *stamp* is correct, Courts will not inquire into the *time* when it was affixed or whether the penalty has been paid. (Edwards on Stamp Act, 256 ; 1 Chitty on Bills, 139 ; 1 Stephens' Nisi Prius, p 797 ; *Rex* v. *Buton,* 17 Com. Law, 434 ; *Green* v. *Davis,* 10 Com. Law, 360.)

### II.

The objection to the note was not good because it appeared that the omission to stamp was without any *intent* to evade the *Internal Revenue Law.* (*Beebe* v. *Hutton,* 47 Barb. 188 ; *Trull* v. *Moulton,* 12 Allen, 397 ; *Desmond* v. *Morris,* 10 Allen, 250 ; *Hallock* v. *Jandin & Co.*)

The Court below should have admitted the note in evidence, after proof by defendant, Torreyson, that this failure to affix the proper stamps, at the time of issuance of the note was through inadvertence, and with no intent to evade the Internal Revenue Law, and that he himself affixed the proper stamps as approved upon the note, at the date of their cancelation, and canceled the same.

### III.

If the note was originally void, and the subsequent stamping by defendant, Torreyson, as testified to by him failed to make it valid, yet each subsequent stamping and *redelivering* made it a valid note from that date. (*Parton* v. *Daniel,* 20 Mis. 148 ; 2 Parsons on Notes and Bills, page xvi of Appendix ; 3 Parsons on Contracts, 313 New Ed.)

The difference in the *dates* of the note *declared on,* and such new note *proved,* was not such a variance as could not have been remedied by a motion to amend the pleadings to conform to the proof. And the plaintiff should have had judgment for the amount prayed for in his complaint *minus* the interest on the face of the note from its date to the date of stamping.

### IV.

The Court below erred in sustaining the motion to strike out the testimony of P. H. Clayton.   If a person is barred from recovery on a note, on account of the insufficiency or want of stamp, he may yet, upon sufficient evidence, recover on the common counts.   (Edwards on Stamp Act, 232, 233 ; *Farr* v. *Price,* 1 East, 43 ; *Tyte* v. *Jones,* 1 East, 58; (note) ; *Alves* v. *Hodgson,* 7 Term Rep. 243.)

Under our system of pleading which requires a plain statement of facts, such statement of facts must be considered as embracing such common counts as would have been applicable to each particular case under the common law system, otherwise it would frequently be impossible for the ends of justice to be attained under our improved system of pleading.

*Robert M. Clarke,* for Respondent.

### I.

The Court did not err in refusing to receive the note in evidence and ordering judgment for the defendant for the reasons following, viz :

1. The note, not being stamped at the time it was made and delivered, is absolutely void.   (Laws U. S. 1865–6, 142–143, Sec. 158.   *Maynard* v. *Johnson,* 2 Nev. 25.)

2. A contract, void because in violation of a public statute or because in contravention of public policy, cannot be made valid by the acts of the parties thereto.

3. The U. S. Revenue Law provides a method by which unstamped instruments may be stamped after made and delivered and thus made valid.   (Sec. 158, U. S. Revenue Law.)   No other remedy being provided, the remedy so provided is exclusive.   The maxim *Provisio unias exclusio alterial* is not only applicable, but conclusive of this point.

Again, the U. S. Revenue Law of 1866 (Sec. 163) provides that no unstamped instrument shall be received in evidence until the legal stamp shall have been affixed in the manner prescribed by law.

## II.

The claim that the stamping of the note by Torreyson on the twenty-second day of November, 1866, was the making of a new note cannot be maintained.

1.   Because the action is plainly and exclusively brought to enforce the note as made March 4th, 1866.   The pleadings contain no allusion to a contract made November 22d, 1866. '

2.   Torreyson did not sign the note anew on the twenty-second day, of November, 1866, but simply affixed and canceled the stamps.   How can a promissory note be made without signing ? If not, how can it be said the mere stamping of an old note denied the legal effect of a ratification can have the greater force of making a new contract ?   Would the stamping of a blank piece of paper make the paper stamped a promissory note ?   If not, it must be apparent that, to make the paper in controversy a promissory note, the Court must give some legal effect to the acts of the parties in making it on the fourth day of March, 1866.   This the Revenue Law forbids.

Furthermore, the payee of the note departed this life July 23d, 1866.   The stamps were affixed and canceled November 22d, 1866.   The payee was not, therefore, *in esse* at the time of the stamping, and for this reason the note cannot be enforced as a new note.

By the Court, BEATTY, C. J.

The facts of this case, so far as material to the points at issue on appeal, are as follows: On the fourth day of March, 1866, defendant executed his promissory note to Mrs. Margaret A. Wayman, or order, for $500 payable one day after date.   This note when executed had no stamp attached to it.   In July, 1866, Mrs. Wayman departed this life.   Subsequently, John H. Wayman administered on the estate of Margaret A. Wayman, and whilst he was acting as such requested the defendant, Torreyson, to affix the proper stamps to the note.   This Torreyson did in the month of November, 1866.   Afterwards, J. H. Wayman brought suit on the note, and upon his death and the appointment of the present plaintiff as administrator *de bonis non*, the suit was revived in his name.

Several defenses were set up by Torreyson against the note. But the Court below held that the note'sued on was invalid, because of its not having been properly stamped when executed, and because the defect of the stamp had not been properly supplied as the statute requires. Under this ruling the defendant was precluded from going into his proofs on other defenses, and the sole question now is whether the lower Court ruled correctly in regard to the stamps.

Appellant raises several questions as to the character, sufficiency, etc., of the answer of defendant, which it is not necessary to notice here. All the facts necessary for a decision of this case are set out in the complaint itself. The next point raised by appellant is that the insufficiency of the stamp to be available as a defense must appear on the face of the note. The authorities he quotes to this point held exactly the reverse. Chitty on Bills, page 139, 12 American, 9 English edition, marginal page 119, lays down the rule that an *innocent indorser* may recover on a note which *appears* on its face to be properly stamped, notwithstanding the stamp may have been improperly put on the note after its execution. But no such ruling is pretended to have been made between the original parties to paper thus improperly stamped. On the contrary, Chitty says that it has been held that inquiry as to when the instrument was stamped is admissible. It is, however, not worth while to waste time in the examination of authorities so totally irrelevant.

Appellant insists that under the law of the United States no note is void for the mere want of a stamp being properly affixed to it, but only so when the stamp is omitted with the fraudulent intent to evade the revenue law. This very point was before us in the case of *Maynard* v. *Johnson*, 2 Nevada, 16.

After a rehearing, and a very patient investigation of the whole subject, we came to the conclusion that under the provisions of the law as it stood in 1864 the note was invalid from the simple omission to stamp it. That to render the note invalid it was not necessary that the stamp should have been omitted with a fraudulent intent. We are now asked to reverse that decision on what are claimed to be authorities directly in point ruling the other way. The first authority referred to on this point is *Beebe* v. *Hutton,* 47 Barbour, 188. That was decided by a Court which was not the

Court of last resort in New York. Three Judges sat in that case. One of the three coincided with the views of this Court as held in the final opinion in *Maynard* v. *Johnson.* The other two held that the note is not invalid unless the stamp is fraudulently omitted. The case in 10 Allen, 250, decides that the omission to properly *cancel* a stamp is not fatal to the note. The distinction between the failure to stamp an instrument and the failure to cancel the stamp is too apparent to need comment. The case in 12 Allen, 397, involved the question as to the sufficiency of a demurrer, and did not necessarily raise the question as to what would be the effect of omitting a stamp from a note. The point was whether in pleading a note and setting it out in the pleading it was necessary to set forth the fact that it was stamped. The Court held the stamp was not a part of the contract, and therefore need not be set out. That there is a *dictum* in this case, to the effect that to make the note invalid the stamp must have been *fraudulently* omitted, is true. And 10 Allen, 250, is referred to in support of the *dictum.* But 10 Allen is not in point.

We have, then, but the ruling of two out of three Judges in one of the New York Courts, and a loose *dictum* of the Massachusetts Court in opposition to our former decision. Upon such authority we should not be disposed to depart from our former rulings.

But even if we were disposed to yield our own judgment, and conform to the views expressed by the majority of the New York Court, it would not avail the appellant. Both our decision in *Maynard* v. *Johnson* and the case reported in 47 Barbour are upon the construction of the law as it stood in the fall of 1864. In the spring of 1865 there was an amendment, which, we think, disposes of this controverted point. Although the language of this amendment is not as clear as it might be, we think it was the intention to make all instruments not properly stamped invalid in the first place, but to allow any person interested to give validity to them by having the proper stamps affixed by a revenue officer, and a note made by such officer of the fact of his having stamped the instrument. It certainly was not the intention of the law to allow the parties themselves to make an invalid instrument valid by *their* affixing the stamp.

The complaint in this case shows the note was not stamped at the time of making, but subsequently stamped by the maker, and not the proper revenue officer.   We have then no difficulty in saying that this note is invalid, treated as a note given in March, 1866, to Mrs. M. A. Wayman.   But that does not dispose of the question whether that piece of writing, which was perfectly invalid when delivered to Mrs. Wayman, in March, 1866, might not become a perfectly good note when properly stamped, and redelivered in November, 1866.

A note does not, as between the parties thereto, become of any force or validity by merely writing and signing the form of a promissory note.   Before our statute requiring stamps to be affixed to notes, their validity depended upon the fact of their having been delivered upon a sufficient consideration.   As the law now stands they must be properly stamped—be founded on a sufficient consideration and delivered.   If this note was not properly stamped in March, 1866, the delivery amounted to nothing more than the delivery of a blank piece of paper, or printed form of a promissory note.   The whole thing then being a nullity, might not Torreyson have taken it back, stamped it, and delivered it so as to make it a new and good note from the date of the last delivery.   Such would appear upon principle to be the correct doctrine.   Mr. Parsons, a very able lawyer, in his work on notes and bills, (Vol. 2, p. 17 of Appendix) expresses this view.   There is a dictum also to the same effect in the case of *Robbins* v. *Deverill,* (20 Wis. 148).

On the other hand the Act of Congress provides specially how a note or other instrument which is not stamped when delivered may be subsequently stamped and rendered valid.   Does not this in effect prohibit its subsequent stamping in any other way ?   Would it not be contravening the policy of the law, and opening the door to frauds on the revenue to allow the parties themselves to put stamps on notes and bills, and cancel them at a date subsequent to the writing and first delivery of such instruments.   In deeds, mortgages, etc., there would, perhaps, be little opportunity or temptation to commit fraud, for a party wishes such instruments to take effect as valid deeds from the day of delivery.   If they were subsequent to the day of execution and first delivery stamped and

redelivered, they would only take effect from the last delivery, and intervening conveyances might cut them out. Not so, however, with notes and bills. The facilities for collecting them does not depend at all on their date. If parties dealing together were desirous of avoiding the revenue law, they might systematically, on an understanding between themselves, leave the stamps off of all notes and bills. If such instruments were paid within the year no stamps need be put on them. If likely to run longer than one year, the maker might then, as per agreement, attach the proper stamp and redeliver. Thus, by agreement of parties, the revenue law might be continually evaded. Nor would there be a very great risk in such an arrangement. If the maker refused to stamp and redeliver, the payee would take the paper within one year of its delivery to the proper revenue officer and have it stamped, by paying the penalty which the law requires.

This question is one which will certainly admit of a plausible argument on either side, and is not without difficulties in its solution. In this case we think it unnecessary to determine the point. Even admitting that Torreyson by stamping and redelivering this note to Mrs. Wayman during her life might have made it a valid note, it by no means follows that his stamping and delivering the note to John A. Wayman made it a good note. To use a homely, expressive phrase, it takes two to make a bargain. There must be two parties to every promissory note, a maker and a payee. When this note was written there were two persons, W. D. Torreyson and M. A. Wayman, who were intended to be parties thereto. The note at that time failed of becoming a valid instrument for want of the proper stamp. Afterwards when the note was stamped Mrs. M. A. Wayman had ceased to exist, and the note as worded was between Torreyson and a person not *in esse.* Such a note we hold to be absolutely void.

Before leaving this point we will notice such authorities as we have found bearing on the question. In the case of *Minnot et al.,* v. *Gibson et al.,* decided in the Court of King's Bench, (3d Term, 481) it was held " if a bill of exchange be drawn in favor of a fictitious payee, and that circumstance be *known* as well to the acceptor as the drawer, and the name of such payee be indorsed on

the bill, an *innocent* indorser for a valuable consideration may recover on it against the acceptor, as on a bill payable to bearer." This case was afterwards affirmed in Parliament, but against the opinion of Eyre, C. B., Lord Chancellor Thurlow, and Heath, J. We can well understand the correctness of the decision in this case, though, perhaps, not of the language used in the opinions of some of the judges. The drawer and acceptor having made a piece of negotiable paper, with the name of a fictitious payee in the face of the bill, and also indorsed thereon, might well be estopped as against an innocent holder from saying such payee was fictitious. Their conduct amounts to a guarantee that the payee was a real personage and the indorsement genuine. It would be against good conscience to allow them to deny or contradict their implied guarantee.

Since the case just referred to, it has been held that if the acceptor was ignorant of the fact that the payee named in the bill was fictitious, he would not be bound by his acceptance, even in favor of a *bona fide* holder. (See *Barrett* v. *Farrell*, 1 Camp. 130, 180c.) So if the holder had the same knowledge that the drawer and acceptor had, that the payee was fictitious, the acceptor would not be bound. (See *Hunter* v. *Jeffrey*, Peake Add. 146.)

These cases seem clearly to establish the rule that if one of the three parties to a bill of exchange is fictitious—that is, a party having no real existence, the bill will be utterly void. Such a rule would seem to apply with greater force to promissory notes. A bill of exchange is a peculiar sort of an instrument, requiring three distinct parties to the contract, before it becomes a perfected instrument. Yet two of the parties thereto may contract certain liabilities towards each other before the third party becomes bound by the bill. But in the case of notes there are but two original parties, and we cannot conceive how the instrument can have any effect or legal validity without two living parties thereto—the one who promises to pay and the other who is entitled to recover.

In the case of *Murray, Administrator of W. Hope*, v. *The East India Company*, (5 Barnwell & Alderson, 204) suit was brought on four bills of exchange. As to three of them they have no connection with the subject under discussion. The fourth bill was

drawn under the following circumstances : W. Hope left India for England in January, 1809, and was lost at sea in a storm the following March. When he left India he left a note in the hands of his agent, to be collected and the proceeds transmitted to England. His agents (it would seem after the death of Hope) collected the note and purchased a bill in their own favor, drawn on the East India Company in London, indorsed it to W. Hope (who was then dead) and transmitted it to England. The Court held that the administrator might recover. The whole of the decision referring to this bill is in this language :

" There was a fourth bill of exchange, to which the statute was not pleaded, and which gave occasion to another point. Mr. Hope, at his departure from India, had left some property under the management of an agent. For the value of this, and for the purpose of transmitting the value to England, the agent obtained this bill of exchange, and being ignorant of the death of Hope, indorsed it specially to him. It was urged that no property in this bill could pass to the administrator, and consequently that he could not sue upon it. But we are of opinion, that as the money for which the bill was remitted belonged to Hope's estate, it was competent to the administrator to elect to take the bill as the mode of payment, and that thereby the property did vest in him, and he acquired a right to sue upon it."

From the language used in this case, upon mature reflection, we conclude that the Court did not intend to hold that an indorsement to a dead man conferred any right on the administrator, but rather that the administrator, under the circumstances of the case, was entitled to recover the money on the bill, regardless of the irregularity of the indorsement. The former agents of Hope had collected the money after their agency had been terminated by Hope's death. A presidency of the East India Company in Asia had received the money belonging to Hope's estate, and to which the administrator of course had title. The London agency of the same Company had accepted a bill for the amount received by their presidency in the East, and this seemed by the Court to have been held sufficient to entitle the administrator to recover.

In one case in the United States, *Foster* v. *Shattuck et al.*, (2

New Hampshire, 446) it is held that a note made to a fictitious payee or order, may be sued on by the person to whom it was delivered as a note made payable to *bearer*. This decision, we think, is not borne out by the cases cited in support, and is hardly correct in principle. It is in fact making for the parties a new and different contract from the one made by themselves. The Court in making this decision seem to have doubted, and only to have come to the determination to prevent a failure of justice. There are other cases which seem partially to recognize the same rule, but they all refer back to the case of *Minott* v. *Gibson*. That does not go to the extent of holding a note or bill made payable to fictitious persons as good between the original parties or those cognizant of the fact that the payee was fictitious.

It has several times been held that a note payable to an estate of a deceased person is not a good note. (See *Lyon* v. *Marshall*, 11 Barbour, 241 ; *Kittle* v. *Thomas*, 30 Miss. 122).

A note to the administrator of an estate (when there is an existing administrator) is good because then the payee is properly designated, not by his name it is true, but still by his office. Just so a note payable to the man who lives in a certain house (describing it) would be good if the description of the house were sufficient and but one man lived in that house. But a note payable to a dead person, or to an estate, is not payable to any particular person, and therefore lacks one of the essential elements of a promissory note, to wit : a payee.

Finally, it is suggested by counsel for appellant that the Court below erred in striking out the evidence of Clayton, because if the note was void the plaintiff might recover on the consideration for which the note was intended to have been given. The latter part of this proposition is true. But the plaintiff could not recover on the original consideration passing between the parties without setting out that consideration in his complaint. There is not a word of the kind in the complaint. Besides, Clayton in his evidence did not pretend to know or say a word about the original consideration for the note. He only testified as to promises of defendant in relation to the note, and general declarations that the note was good. Judgment affirmed.

JOHNSON, J.

At the time the note was issued, March 4th, 1866, the Revenue Law of June 30th, 1864, as amended by the Act of March 3d, 1865, was in force. Section 158 of the Act, when so amended, read as follows : " That hereafter in all cases where the party has not affixed to any instrument required by the one hundred and fifty-first section of the Act of June 30th, 1864, or the schedule marked B, thereunto annexed, the stamp thereby required to be thereunto affixed at the time of making or issuing the said instrument, and he, or they, or any party having an interest therein shall be subsequently desirous of affixing such stamp to said instrument, he or they shall appear before the collector of the revenue of the proper district, who shall, upon the payment of the price of the proper stamp required by law, and of a penalty of fifty dollars, and where the whole amount of the duty denoted by the stamp required shall exceed the sum of fifty dollars, on payment also of interest, at the rate of six per cent. on said duty, from the day on which such stamp ought to have been affixed, affix the proper stamp to such instrument, and note upon the margin of said instrument the date of his so doing, and the fact that such penalty has been paid, and such instrument shall thereupon be deemed and held to be as valid, to all intents and purposes, as if stamped when made or issued ; *and, provided further*, that when it shall appear to said collector, upon oath or otherwise, to his satisfaction, that any such instrument has not been duly stamped at the time of making or issuing the same, by reason of accident, mistake, inadvertence, or urgent necessity, and without any willful design to defraud the United States of the stamp duty, or to evade or delay the payment thereof, then and in such case, if such instrument shall, within twelve calendar months after the making or issuing thereof, be brought to the said collector of revenue to be stamped, and the stamp duty chargeable thereon shall be paid, it shall be lawful for the said collector to remit the penalty aforesaid, and to cause such instrument to be duly stamped."

When the amendment was adopted, the only authority contained in the Act whereby an instrument unstamped when issued could

afterwards be lawfully stamped, was found in Section 163, which applied exclusively to transactions occurring *before the passage of the Act*—June 30th, 1864. This distinction, in a measure, was abolished by the last two *provisos* above quoted, so that any instrument might be stamped by permission of the Tax Collector, upon payment of the stamp duty and the penalty prescribed in the Act. By the last proviso, when satisfactorily shown to such officer that the stamp had been omitted without any willful design to defraud the revenue, or to evade or delay the payment thereof, he might remit the penalty, and upon payment of the tax, cause the instrument to be stamped within twelve months after it was made or issued. This clause was extended by Act of July 13th, 1866, so that in such a case the stamping might be done at any time before the first of August, 1867.

It was shown at the trial, as stated in the opinion of the Chief Justice, that the note was not stamped when issued; that in November, 1866, Torreyson, the maker thereof, when requested to do so by the administrator, affixed to it the requisite amount of stamps, but without authority of the Revenue Collector of the District, and that the omission of the stamp in the first instance was not with an intent to evade the provisions of the Act. These facts, with the pleadings, bring up the main question in the case, whether such stamping was sufficient to entitle the plaintiff to maintain an action upon the note.

Upon the construction given to the amended law, I concur in the conclusions reached in the foregoing opinion. The correct view, in my judgment, is there taken, " that it was the intention of the law to make all instruments, not properly stamped when issued, invalid," and none such could become valid except in the way pointed out in Section 158. The authority to permit such an instrument to be stamped is lodged exclusively with the Revenue Collector; and he is furthermore constituted the sole judge as to whether the stamp was omitted " with intent to evade the provisions of the Act." *Primarily*, in all cases of an unstamped instrument the penalty attaches, and the amount thereof, in addition to the stamp duty, must be paid to the Collector before it can be lawfully stamped, subject, however, to a remission of such penalty by the

officer within a given time, upon satisfactory cause being shown. The law, by conferring this authority on the officer, excludes the idea that another person may do it; whence it follows, that the act of Torreyson, in affixing the revenue stamp, was wholly unauthorized, and the instrument left as if never stamped, and therefore "invalid and of no effect" *under the law*. But it is claimed that the note may be treated as executed on the day of such stamping —November, 1866. This proposition the majority of the Court have thought proper—and perhaps correctly so—to consider in the light it was presented on the argument. In that view of it, I shall express no opinion, as I think the question is disposed of in our construction of Section 158.

Allow that the administrator, under existing circumstances, has the same right to maintain an action on the note, as he would have if the entire transaction had occurred between Torreyson and Mrs. Wayman; that Torreyson had stamped the note and redelivered it to Mrs. Wayman under precisely the same circumstances; yet the principal objection is not removed—that is, that the note was never lawfully stamped. The omission of the stamp rendered the note invalid and of no effect, and the penalty at once attached. The consequence of such infraction of the law could only be avoided in the way pointed out by the law. A subsequent stamping and redelivery by the party was not a compliance with, but an attempted evasion of the law, and neither relieved from the penalty nor gave validity to the transaction. There was no pretense of making a new contract, as the parties were at liberty to do by the execution and acceptance of a new note; but the acts done simply show an intention to legalize a past and invalid contract in an unlawful and unauthorized manner, and of a consequence, no new or additional legal obligation was created.

The Revenue Act had opened the way to the parties to consummate their first intent—to make valid the obligation of the maker of the note to pay it according to its terms. The way pointed out was not pursued, and whatever may be the equities existing between Torreyson and the estate of Mrs. Wayman, it is not the province of the Court to set aside a certain provision of the tax-law for the purposes of such inquiry.

10

I have considered this question solely in the relation it bears to the Federal stamp laws which apply to the facts in this case, as these are the only legitimate matters proper to be discussed by counsel on the hearing, or to be passed on by the Court at this time. The authorities, English and American, including the citation from 2d Parsons on Bills and Notes, which have been referred to by appellant, have the least possible bearing upon the questions in this case. The New York, Massachusetts, Wisconsin and California cases, with some others not included in the references made, whether opposed or not to a former decision of this Court, arise under a different law from the Act of 1865. And when Judge Parsons wrote his admirable treatise, the clause referred to had no application to the peculiar provisions of an act not then passed. This is a peculiar statute, harsh and exacting, perhaps to an unwonted degree, but we must accept it according to its terms, and give it a construction consistent with its obvious intent and meaning, guided by the decisions of other courts and expressions of law writers only so far as the reason thereof appears. In this instance we have no precedents exactly in point, and must necessarily be guided by our own view of the question.

Upon the argument appellant's counsel complained of certain alleged irregularities in the clerk's office, by which he was prevented from taking a default and judgment when entitled to it. I have looked into the record, but find nothing by way of a statement or bill of exception covering the ground of complaint in this particular, and therefore it cannot be inquired into on this appeal.

I concur in the judgment of affirmance.