ROBERT HOUGHTON v. JAMES G. ROSS.

*Sale—Transfer of title—Receipt as account stated.*

1. H and W were employed in a lumber business and W went to Canada for teams. H owned a span of gray mares, which he asked W to bring when he returned. W found the expense of bringing them too great and sold them, but told H, on returning, that he had a team of black ponies that would suit him. He did not say, how-ever, that he had traded the grays for the blacks. *Held,* that without some agreement of sale, carried out by payment of price or earnest money or by delivery, there was not enough in the evidence to show a transfer to H of the title to the ponies.

2. A receipt which states its purpose to be for a complete settlement, and which covers the whole period of dealing, is equivalent to an account stated; and though it is open to explanation as to errors or omissions, it cannot be treated as if it had not been meant to cover everything.

Error to Marquette. (Grant, J.) June 19.—June 25.

ASSUMPSIT. Defendant brings error. 'Reversed.

*F. O. Clark* for appellant.

*E. J. Mapes* for appellee.

CAMPBELL, J. In this case Houghton sued Ross for the use of two teams which Ross bought of Gordon & Co., but which plaintiff claimed as his own. One was a team of black ponies which plaintiff insisted were given him for a pair of gray mares disposed of in Canada for a much less sum than the ponies were worth. The other team he claimed to have bought from a vessel. As it was intimated on the hearing that this second team had been put out of the case by a reduction of the verdict, we need not look beyond so much of the record as refers to the others.

In this, as in the replevin case, plaintiff's testimony about the bargain is all that is most important on his side, although there was some other testimony. It appears here as there

that while plaintiff was employed by Gordon & Co. in their lumber business in Schoolcraft county, under Mr. Weller, as their general agent, he desired Weller, who was going down to Canada after teams, to bring up a team of gray mares which plaintiff had owned for several years. Weller, instead of bringing them up, sold them as not worth bringing at the rates of freight and duties which would be payable. He did this without any previous authority. He bought thirteen or fourteen teams and had them taken up. About a month after his return plaintiff saw him and he told him of the sale. Plaintiff says that he told him he had a nice young team that would satisfy him, but did not say he had traded the grays for the blacks, but afterwards pointed out the blacks as plaintiff's team. According to plaintiff's testimony he had more or less teams under his orders, but these horses, although brought up in October, did not come to his camp until the next March, and did not come into his personal possession for some time thereafter.

The teams having been sold by Gordon & Co. to Ross, and used in Ross's business, plaintiff sues for their use. There is considerable testimony which is in conflict. Among other things there was a receipt in full of all demands given to Ross by plaintiff, covering the use of a team not including those now in dispute, but not covering these.

We find no testimony which can be relied on as distinctly showing a sale and delivery of these horses to plaintiff. As he is the only person who swears to any such bargain at all, and who swears to what was done, it cannot be supposed that he has left out any important element. He shows that there was no authority to sell the grays, and that he was not given to understand the grays were exchanged for the blacks. This being so, there could have been no transfer of title without some agreement of sale carried out by payment of price or earnest, or by delivery. It is very difficult to make out any such transaction.

When plaintiff receipted to Ross, it was for the purpose of a complete settlement, and the receipt so states. It was made at the end of his term of service. It covered the

whole time of his employment with Ross. It covered a charge for one team, and it gave credit for all moneys received.

This being so, the charge was not correct in regard to its effect. It is undoubtedly true that a receipt may be explained and mistakes corrected under proper circumstances. But the court put the case to the jury on the theory that if it was not understood by the parties to be a settlement in full, if no reference was made to the use of these horses during this time, and the settlement was not made with reference to that, then of course it would not cover pay for the horses, but would only cover the account it purports to cover.

This statement and the receipt attached to it cannot bear any construction except that of an account stated. It is in' such a shape as to exclude the idea that it does not mean to cover everything. It is entitled to all the respect due to an account stated, and while open to any explanation which can be properly allowed for errors or omissions, it certainly implies on its face not merely that it was intended to cover what is detailed, but also that there is nothing outstanding which is not detailed. Perhaps this may have been what the court understood, but the language used leads to a different impression, and the difference is quite material, and as the testimony stood, was very well calculated to lead to a wrong conclusion.

The judgment must be reversed and a new trial granted.

The other Justices concurred.