WILLIAM E. WESSELS v. WASHINGTON BEEMAN AND CHARLES W. TANN.

[See 66 Mich. 343.]

*Fraudulent conveyances—Trover—Evidence—Violation of internal revenue laws.*

1. Title in a third person may be shown as a defense in an action of trover; citing *Seymour v. Peters*, 67 Mich. 415.

2. In the investigation of fraud it is usual to permit a wide range of investigation of matters that will throw light upon the question at issue, but irrelevant testimony is no more admissible in such cases than in any other investigation or trial of civil actions at law.

3. In an action of trover by a vendee against an execution creditor of the vendor, the defendant cannot set up as a defense that the sale was in violation of the United States internal revenue laws, when neither of the parties has repudiated the contract, and it has been fully executed.

4. The title of the United States to goods forfeited by reason of their sale in violation of the internal revenue laws is not consummated until after judicial condemnation, when it relates back to the time of the commission of the offense (*Caldwell v. United States*, 8 How. 381); and, in trover by the vendee for the conversion of the goods, evidence of such forfeiture, offered for the purpose of showing title in a third person, is inadmissible, unless supplemented by proof of such condemnation.

5. The tendency of testimony to prove a disputed fact is exclusively for the jury, and it is error for the circuit judge to add the weight of his opinion as to what the testimony tends to prove.

6. A creditor received from a debtor certain real-estate mortgages and a bill of sale of personal property in payment, as he claimed, of an existing indebtedness. About two months afterwards the debtor made a general assignment of all his property to a third party for the benefit of his creditors, and the assignee sold the equity of redemption in the mortgaged premises at public auction, and the creditor (mortgagee) became the purchaser

87 MICH.—31.

of a portion of the land covered by his mortgages. In a suit brought by the creditor against a *judgment* creditor of the debtor, who had sold the property covered by the bill of sale on execution, the defendant was permitted to prove said assignment and sale by the assignee, which testimony is held admissible; there also being testimony in the case tending to show that the debtor contemplated making the assignment before the transactions with the plaintiff.

6. In a suit between a plaintiff claiming personal property under a bill of sale absolute on its face, and a creditor of the vendor, the jury may consider the fact that the vendee filed the bill of sale in the office of the township clerk of the proper township as evidence bearing upon the claim made by him that the transfer was absolute, and not by way of security.

Error to Gratiot.    (Hart, J.)    Argued July. 1, 1891. Decided July 28, 1891.

Trover.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion, and in the former report of the case, found in 66 Mich. 343.

*C. J. Willett,* for appellant.
*Sawyer & Knowlton,* for defendants.

CHAMPLIN, C. J.   This is an action of trover, brought to recover damages for converting some tobacco and cigars, of which plaintiff claims to have become the owner by purchase from one Aaron Wessels, who appears to have been a manufacturer, dealer, and general trader in the village of St. Louis, Gratiot county, Mich.[1]  Upon the trial, the plaintiff in the first instance contented himself by proving the ownership of the property in Aaron Wessels, a sale by Aaron Wessels to him, evidenced by a bill of sale dated November 17, 1883, and by introducing testimony tending to show a delivery of the property, its

---

[1] The declaration includes other property (see first paragraph of former opinion), but the plaintiff only claimed to recover a verdict for the value of the tobacco and cigars.

value, and the conversion of the same by the defendants.

The defendant Beeman was a judgment creditor of Aaron Wessels, and defendant Tann was under-sheriff, and the defense interposed is that the conveyance by Aaron Wessels to William E. Wessels, the plaintiff, was fraudulent and void as to the creditors of Aaron Wessels.

A further defense relied upon with reference to the alleged sale from Aaron to William was based upon the fact that a large number of the cigars were unstamped, and were forfeited to the United States government under the Revised Statutes of the United States, §§ 3400, 3405.

The case was before us at the April term, 1887, and is reported in 66 Mich. 343. Only one of the points then raised—but not decided—is before this Court now; and, were it not for the reason that we feel it our duty to reverse the case and send it back for another trial for error in the rulings upon the admission of testimony and in the charge of the court, it would not be necessary to decide that point now, which is, whether the sale of unstamped cigars passed any title to the plaintiff. The defendants' counsel contend that no title passed, and cite: Rev. Stat. U. S. §§ 3397, 3398, 3400, 3404, 3405; *Miller v. Post,* 1 Allen, 434; *Insurance Co. v. Harvey,* 11 Wis. 394; *Johnson v. Hudson,* 11 East, 180; *Brown v. Duncan,* 10 Barn. & C. 93; *Cope v. Rowlands,* 2 Mees. & W. 149; *Fergusson v. Norman,* 5 Bing. N. C. 76; Benj. Sales, § 538; Anson, Cont. 172, 173; *Miller v. Morrow,* 3 Cold. 587; *Wayman v. Torreyson,* 4 Nev. 124; and other cases.

It appears from the testimony that the plaintiff, at the time he received the bill of sale, received also from his vendor, Aaron Wessels, the key of the room where the cigars were stored, and also the key of the barn where the tobacco was stored, and that he placed one Garbutt in control thereof as his agent; that he went to the town clerk's office, and filed his bill of sale among the chattel-

mortgage securities; that he was told by the deputy-clerk that if it was an absolute sale of the property, and he had actual possession of it, filing was not necessary, and he replied that he had the key of the room where it was stored in his pocket, and insisted upon filing the instrument, which was done on the 19th day of November, 1883. No affidavit of renewal was filed, and, after more than a year had expired, defendant Beeman seized the property under his execution, and it was sold at sheriff's sale.

Defendants claim that, as plaintiff had filed the bill of sale, he was estopped from denying that it was intended for security, instead of an absolute transfer, and requested the court so to charge. The court declined to do so, but instructed the jury that they might consider the fact that plaintiff had filed the bill of sale as evidence bearing upon the claim made by him now, that the sale was absolute. The plaintiff excepted to the latter part of the charge. There was no error in this portion of the charge. It was proper for the jury to consider the fact in determining whether it was an absolute sale, as claimed by plaintiff, or intended as a security, as claimed by defendants. If the jury found that there was an absolute sale, then the question of delivery and actual and continued change of possession was important, for, if there was no actual delivery, followed by a continued change of possession, the burden of proof was upon the plaintiff to show that the sale was made in good faith, and without any intention to defraud creditors; but if it was intended as a security, and the affidavit was not filed as required by the statute, then it would be void as against such creditors as should acquire a lien after the expiration of a year and before the filing of the renewal affidavit; and in this case it is conceded that no renewal affidavit was filed.

The act of the party in filing a bill of sale had some

significance upon the question as to whether it was an absolute transfer or only a security. If, as plaintiff contends, the bill of sale evidenced an absolute transfer of the property to him as purchaser, yet he is not estopped from so asserting, notwithstanding he filed the bill of sale in the clerk's office. The attorney of the defendants was informed, when the instrument was placed upon record, that the plaintiff claimed he had possession of the goods; that he had the key in his pocket of the room in which they were stored; so that, so far as the defendants were concerned, the filing was not such an unequivocal act as would estop plaintiff from asserting that the instrument was a bill of sale absolute, and not intended for security;[1] but, further than this, there is no estoppel pleaded, and the testimony was not admissible without being embraced in the pleadings, or the facts constituting it set out in the notice. *Johnson v. Stell-wagen,* 67 Mich. 14, and cases cited.

It was also claimed by the defendants that the sale was made with intent to hinder, delay, and defraud the creditors of Aaron Wessels. In the investigation of this question the defendants were permitted a wide and almost unbounded range of inquiry concerning transactions prior and subsequent to the sale to plaintiff, and concerning matters with which the plaintiff had no connection whatever. In the investigation of fraud it is usual to permit a wide range of investigation of matters that will throw light upon the questions at issue, but irrelevent testimony is no more admissible in trying questions of fraud than in any other investigation or trial of civil actions at law. I think the court went far beyond what is allowable in the trial of such issues, and a great mass of testimony was admitted bearing upon the good faith and fair dealing of Aaron

[1] The attorney was deputy town clerk, and was present when the bill of sale was filed with the clerk.

Wessels, plaintiff's vendor, entirely disconnected with the transaction between him and the plaintiff, which could have had no other effect than to prejudice the minds of the jury, and call their attention away from the real issue which they were called upon to decide.

The plaintiff's claim was that he was a creditor of Aaron Wessels; that he had loaned him money, for which he had received the promissory notes of said Wessels; and on the 17th of November, 1883, he settled with Aaron Wessels, and received the mortgages, and goods included in the bill of sale, in full discharge of such indebtedness. The defendants' claim was that plaintiff was not a creditor, or, if at all, not to the amount he claimed, and that the execution of the mortgages and the bill of sale was for the purpose of hindering, delaying, and defrauding defendant Beeman and other creditors from collecting their debts. There was testimony introduced tending strongly to prove that Aaron Wessels was engaged in an attempt to defraud his creditors. But such intent would not affect *bona fide* transactions between Aaron Wessels and any of his creditors who received from him money, property, or security for their debts, unless they participated with Wessels in an attempt to defraud the other creditors.

The questions here are:

1. Was the plaintiff a creditor to the amount claimed by him?

2. Did he settle and receive the mortgages upon real estate and the property mentioned in the bill of sale to satisfy such indebtedness?

3. Was there such a disproportion between the value of the property received and the indebtedness due to plaintiff as to raise the presumption of want of good faith, and justify the inference that the conveyances were made as mere clouds to shield the property from the reach of the other creditors?

4. Was the property in question in this suit, covered

by the bill of sale, delivered, and followed by an actual and continued change of possession?

Any testimony tending to throw light upon these questions, and also upon the intent of Aaron Wessels in making the trade, was admissible.

It was not admissible for defendants to show that, in January following the transaction with the plaintiff in November, Aaron Wessels made a general assignment for the benefit of his creditors, and that the assignee sold the equity of redemption in the premises mortgaged at public auction, without further showing that the plaintiff was in some way connected with these subsequent transactions, or that they occurred pursuant to an arrangement between Aaron Wessels and plaintiff, made at or before the conveyances to him, and as a part of the fraudulent scheme.[1]  Plaintiff's counsel contended that there was no testimony whatever tending to show that the plaintiff was in any manner connected with a scheme for making an assignment; that the fact that he purchased some of the property covered by his mortgages at assignee's sale did not have a tendency to show that he was connected with the assignment, any more than would the fact that other parties bought some of the property covered by these mortgages at such sale tend to show that they were connected with the assignment. There was testimony tending to show that Aaron Wessels contemplated making an assignment about the 1st of November, 1883, before the transaction with the plaintiff; and the testimony was relevant as tending to show the dealings of the plaintiff and Aaron Wessels with the property which he claims to have received in payment of his indebtedness.  It may have had a bearing upon the

---

[1] At the time of taking the bill of sale of the tobacco and cigars, plaintiff received from Aaron Wessels certain mortgages on real estate, and at the assignee's sale he purchased a portion of the mortgaged premises.

question of the good faith of the transaction, and should have been and was submitted to the jury for their consideration in connection with the rest of the testimony in the case. There was no error, therefore, in admitting that testimony, for the reason, as stated, that plaintiff purchased property at the assignee's sale covered by his mortgages.

The counsel for plaintiff further contends that defendant Beeman as a creditor should have presented his claim to the assignee, and that the assignee is the only one who had authority to inquire into and contest the validity of the sale to the plaintiff as being a fraud upon the creditors. But this is a case where the plaintiff has sued the defendants for converting his goods to their own use. The burden of proof is upon him to show his title to the goods at the time of the alleged conversion; and if the defendants could not be justified in seizing the goods as Aaron Wessels' property because the title was vested in the assignee, neither could the plaintiff maintain trover for them if such title was not in him, but was in the assignee. It is a defense in trover to show title in a third person. *Seymour v. Peters*, 67 Mich. 415; *Ribble v. Lawrence*, 51 Id. 569.

The circuit judge permitted a witness for the defendants to testify to what persons—some of whom inspected the tobacco with a view of becoming bidders at the sheriff's sale, and others who were such bidders or were present at such sale—said respecting the bad quality of the tobacco. It needs no argument or reasoning to demonstrate that such testimony is hearsay, and therefore inadmissible. If defendants could be permitted to swear to what persons said in derogation of the quality of the goods, plaintiff could with equal propriety introduce witnesses to show what people had said extolling the qualities of the goods.

Counsel for the defendants was permitted to offer in evidence writing which he said he had written with the same pen and the same ink for the purpose of illustrating the different shades that ink may take upon different kinds of paper, although written with the same pen and ink, and at the same time. He said that it was admitted that he wrote them, and wrote them then and there, at the clerk's desk. Counsel for the plaintiff objected for the reason that it was immaterial and incompetent. The court received the evidence. We do not see what relevancy such testimony had or could have to the issue. So far as appears from this record, it should have been excluded.

The question whether there had been a delivery of the goods sold, followed by an actual and continued change of possession, was one of the most vital issues in the case. In his charge to the jury upon this issue the circuit judge said:

"It is for you to say from the testimony whether or not it was such a changed and continued possession as I have indicated as necessary; only I have this to say: That, if Mr. William E. Wessels did take possession of the property, and then turn it back to Aaron Wessels for him to manage (as I think there is some testimony tending to show), I do not think that is such a continued change of possession as the statute contemplates."

The circuit judge erred in stating to the jury that there was some testimony tending to show that plaintiff took possession of the property, and then turned it back to Aaron Wessels for him to manage. We have frequently held that the tendency of the testimony to prove a certain fact is exclusively for the jury, and it is error for the circuit judge to add the weight of his opinion as to what it tends to prove, when there is a dispute in the testimony upon a point. *Perrott v. Shearer*, 17 Mich. 48;

*Blackwood v. Brown,* 32 Id. 104; *Hayes v. Homer,* 36 Id. 374.

We do not think the testimony relative to the removal of the cigars, the failure to box and stamp, and the selling of unboxed and unstamped cigars was admissible in this case. The object of introducing such testimony was to prove title in a third person, namely, the United States; and it is claimed, and correctly so, in my opinion, that forfeiture, under the Revised Statutes of the United States referred to, must be deemed to have attached at the moment the offense was committed, and hence the title then vested potentially in the United States, so as to cut off all sales made afterwards, as well as all liens. But the title of the United States to the goods forfeited is not consummated until after judicial condemnation, and then it relates back to the time the offense was committed. The law requires proceedings to be instituted for the purpose of ascertaining the fact of forfeiture. *Caldwell v. U. S.,* 8 How. 381, 382. There was no testimony introduced, and none offered, to show that the United States had taken any steps to enforce the forfeiture, although its revenue officers were acquainted with the facts. If no proceedings are instituted within five years, the statute of limitations bars a proceeding by the government where there are no obstacles to its proceeding within that time, in which case the forfeiture may be considered as waived.

We do not think that third parties can set up the illegality of a sale in violation of the revenue laws to defeat an action brought against such third persons for intermeddling with the property, or converting it to their own use, when neither party to the contract has repudiated it, and the contract has been fully executed. To permit it would be to introduce and require the determination

of collateral issues without the parties to such issues being before the court, and over which this Court has no jurisdiction. A great deal of the testimony introduced upon the trial had relation to these collateral issues. The cross-examination of Aaron Wessels, the opinion testimony of handwriting, the suggestions of false and fraudulent entries, were such as to influence the minds of the jury, and affect their verdict, upon the question of the good faith of plaintiff's purchase,—an influence which the charge of the court was not calculated to remove. After letting in this mass of testimony against plaintiff's objection, the court merely instructed the jury:

"It is claimed by the defendants that this sale was void, because made in violation of the revenue laws of the United States, if made at all, and passed no title to plaintiff; and they ask me to direct you to render a verdict for the defendants, for this reason, of not guilty. This request of the defendants is refused."

The whole tendency of the testimony was to impress the jury with the idea that the fraud upon the revenue laws was in some way connected with the sale to plaintiff, and that no title passed to him by the sale. We think the error was prejudicial.

The judgment must be reversed, and new trial ordered.

The other Justices concurred.