### EXCELSIOR IRON WORKS *v.* LEE.

CONDITIONAL SALES—TITLE—ESTOPPEL.

> An electrical company, by contracting with an employé to let him have machinery at a minimum price, and to allow him all he might be able to obtain for it over and above such price, was not estopped to assert title to a dynamo which defendants ordered from the employé, and which was thereafter constructed for him by the company under a special contract reserving title until the price was paid, where the company advised defendants by letter, before the machine was shipped or payments made, as to the terms of payment (which differed from those agreed upon with the employé), and informed them that the dynamo was the property of the company until fully paid for. GRANT, J., dissenting.

Error to Berrien; Coolidge, J.    Submitted February 6, 1900.    Decided March 27, 1900.

Replevin by the Excelsior Iron Works against Fred E. Lee and William G. Howard, trustees of the estate of P. D. Beckwith, deceased.    From a judgment for defendants, plaintiff brings error.    Reversed.

This is an action of replevin to recover possession of one single-phase Mayo alternator and exciter.    The finding made by the court covers 14 pages.    It is unnecessary to state the findings in full.    The court rendered judgment for the defendants.    The correctness of the judgment depends upon the determination of one principle of law.    If this was correctly decided, all the other questions raised become immaterial.    We will state only those of the facts found which are essential to a determination of this question.

Plaintiff is an Illinois corporation, engaged in the manufacture of electrical and other machinery in Chicago. Defendants, as trustees, are operating certain factories at

Dowagiac and Buchanan, in Michigan. In February, 1896, one V. J. Mayo and the plaintiff entered into the following agreement:

"V. J. Mayo agrees as follows: To give his services as electrical engineer; to design and personally superintend the construction of such electrical apparatus as the Excelsior Iron Works may determine to manufacture; to have entire charge of all correspondence on electrical matters; to advertise, by such methods as he may deem best, the apparatus over which he may have charge; to bear the expense of such advertisement, also the expense of a stenographer, should he at any time deem it prudent to employ one. In consideration of the performance of this, the Excelsior Iron Works agrees to pay to V. J. Mayo twenty-five dollars per week during such time as may be mutually agreeable, and thereafter, during the life of this agreement, to pay V. J. Mayo thirty dollars per week; to make said Mayo, from time to time, a minimum price (which shall be designated as the manufacturer's price) that shall be paid to the Excelsior Iron Works for the different types and sizes of machines that may be constructed under this agreement; to give to said Mayo any sum or sums of money that he may be able to obtain over and above the manufacturer's price, for his own use and benefit. The lifetime of this agreement shall be two years from and after February 15, 1896."

Under this contract Mayo sold a number of machines in his own name, concerning which there was no difficulty or dispute. Under it Mayo sold in January, 1897, to defendants, in his own name, a similar machine to the one now in controversy. That contract reads as follows:

"Memorandum of agreement between V. J. Mayo, of Chicago, and the estate of P. D. Beckwith, of Dowagiac, Michigan:

"V. J. Mayo agrees to furnish, F. O. B. cars Chicago, one 65 K. W. alternating current Mayo dynamo, to develop 3,300 volts of 16,000 alternations at 800 revolutions per minute, with an efficiency of 93 per cent.; also one direct coupled exciter with same. This machine is to be delivered within sixty days from January 19, or within two weeks after the steel castings for the same are received.

"For and in consideration of the faithful performance of this by V. J. Mayo, the estate of P. D. Beckwith agrees to pay eleven hundred and forty-one dollars, as follows: Four hundred dollars cash, the receipt of which is hereby acknowledged; $200 in fifteen days from date of receipt of machine; $200 in thirty days from receipt of machine; and $341 in sixty days from receipt of machine.

"The estate of P. D. Beckwith also agrees to accept or reject the above machine within fifteen days from the date of its receipt, and to ship to the Excelsior Iron Works the 60 K. W. machine now in operation at their plant."

Plaintiff was not known to the defendants in that transaction. Defendants paid Mayo $600 in cash, and the balance was paid by two drafts drawn by Mayo to the order of plaintiff. Plaintiff's manager wrote these drafts, and the proceeds were received by it.

On March 1, 1897, Mr. Mayo visited defendants at Dowagiac, and made the contract for the machine in dispute, by which he agreed to sell defendants said machine for $860, and agreed to receive in part payment a second-hand dynamo at the valuation of $500. This contract was dictated by the plaintiff's manager. The second-hand dynamo was delivered at the date of the contract. On April 7th following, Mr. Mayo wrote to plaintiff as follows:

"*Gentlemen:* I herewith offer you $750 for one single-phase Mayo alternator and exciter complete, with a capacity of 60 K. W. at 1,150 volts, and 884 R. P. M. Terms of settlement, $250 in thirty days, $250 in sixty days, and $250 ninety days after shipment; you to own the machine until fully paid for."

To this letter plaintiff replied as follows:

"V. J. MAYO, Esq.

"*Dear Sir:* Your proposition to pay us $750 for 60 K. W. machine, as made by you in letter of April 7, is accepted. It is understood that the machine will be built under your supervision, and in accordance with your instructions, and that our responsibility ceases when we have done so."

On July 26th plaintiff wrote the manager of defendants as follows:

"*Dear Sir:* At the request of V. J. Mayo, we will ship to your address, Buchanan, Michigan, one K. W. dynamo, probably on Wednesday or Thursday of this week. We beg to inform you that this machine is the property of the Excelsior Iron Works until fully paid for; the terms of payment being thirty, sixty, and ninety days from date of shipment.   Your acknowledgment of the receipt of this communication is solicited."

To this letter defendants replied, acknowledging its receipt, and saying:

"Regarding settlement, would as soon settle all in thirty days if the machine is O. K."

Plaintiff did not know that the second-hand machine was received in part payment for the new machine.   Defendants knew no more about the relations between Mayo and plaintiff than had been disclosed by their previous dealings.   Defendants made other payments to Mr. Mayo, and by October 30th all but $50 had thus been paid.   On October 11th plaintiff wrote defendants as follows:

"*Dear Sir:* Mr. V. J. Mayo reports to us this morning that the 60 K. W. dynamo shipped to Buchanan was left by him last night, running, and satisfactory to all concerned.   It will be gratifying to be assured of this, and we will feel obliged to you if at your early convenience you will corroborate this information.

"In settlement of this machine, will it be agreeable to you to accept a draft drawn by Mr. Mayo in favor of the Excelsior Iron Works for a part of the purchase price (approximately $865), leaving the balance to be adjusted as Mr. Mayo and you may determine?   If agreeable, will you kindly designate at what time the draft shall be made payable?   On receipt of your acceptance of this draft, we will release the machine.   (See our letter of July 26th.)"

To this defendants replied on the 12th that, as all their dealings had been with Mr. Mayo, they thought it best that they continue with him.   Other correspondence is set forth in the findings, but we do not deem it material.

*Lawrence C. Fyfe* and *Thaddeus O. Bunch*, for appellant.

*M. L. Howell*, for appellees.

GRANT, J. (*after stating the facts; dissenting*). Plaintiff's counsel insist that the contract of sale between it and Mayo on condition that the title remain in plaintiff until the purchase price is paid is binding upon the defendants. They cite authorities from this and other courts sustaining conditional sales. These decisions are numerous, and need not be cited. The principle is well settled. No prior decision in this court involves facts similar to those of the present case. In former decisions the property had been purchased for use by the vendee under contracts by which he had no authority or right to sell the property. There was always an implied, if not an expressed, agreement that the vendee retain possession. Such are cases of organs, pianos, engines, boilers, reapers, and mowers, and all kinds of machinery designed, intended, and understood to be for the sole and personal use of the vendee until paid for. Ought this rule to be extended to include merchants and manufacturers who sell their merchandise and products to other dealers, who purchase them for the sole purpose of resale? If it be so held, then no person is safe in buying goods or machinery from retail merchants and dealers, for he may have his property taken away from him by the wholesale merchants and manufacturers who sold to the retailers. Such a rule finds no support in justice or law. By the contract between plaintiff and Mayo it was expressly understood that Mayo could sell the machines,— that he was to sell them as his own,— and consequently was authorized to receive the purchase price. Plaintiff knew at the time of its contract with Mayo that Mayo had already contracted to sell the machine to the defendants under a contract which, upon its face, showed the right of Mayo to sell. If plaintiff desired to protect itself from Mayo through the defendants, it should have notified them as soon as it had knowledge of the contract. It had such knowledge at the time the contract was executed. It is now estopped to assert that Mayo had no authority to sell the machine as his own, to receive payment there-

for, and to assert as a defense the conditional sale to Mayo. The letter of July 26th contained no direction to defendants not to pay Mayo. The reasonable construction to be placed upon that letter is that plaintiff was seeking to protect itself, not as against Mayo, but as against the defendants. Besides, plaintiff could not thus change the terms of their contract with Mayo, unless all parties assented to it. Defendants refused their assent, and insisted upon their contract with Mayo. The judgment should be affirmed.

MONTGOMERY, C. J. The contract was clearly good as between the plaintiff and Mayo. In what way has the plaintiff estopped itself to assert it as against defendants? If we assume that a manufacturer may estop himself from relying upon a reservation of title to property placed in the hands of a middleman, who is expected to make sale of it to purchasers in open market, the question remains whether the facts here will show such a case. When the contract between Mayo and defendants was entered into, the plaintiff was under no obligation to furnish Mayo the machine in question. It was competent for it to contract to furnish such a machine on such terms as were embodied in the contract of April 7th, provided that the plaintiff did no act, and was guilty of no omission, which might mislead defendants. Doubtless, if the plaintiff had permitted Mayo to deal with the machine as his own, it would be estopped. Did it do so? The answer to this question depends upon the construction which we give to the letter to defendants written July 26th. I can discover no ambiguity in this letter. Starting out with the understanding that the contract of purchase made by defendants was with Mayo alone, and that such contract contained no reservation of title, the letter is plain. It states that at "the request of Mayo" plaintiff will ship the machine, but adds, "We beg to inform you that this machine is the property of the Excelsior Iron Works until fully paid for; the terms of payment being thirty, sixty, and ninety days

from date of shipment." It was known to defendants that this statement did not accord with the contract which defendants had made—*First*, their contract was with Mayo; *second*, there was in that contract no reservation of title; and, *third*, the terms of payment were not those agreed upon with Mayo. It is difficult to see how notice of plaintiff's rights could be more plainly stated.

The judgment is reversed, and judgment entered for plaintiff.

HOOKER, MOORE, and LONG, JJ., concurred with MONTGOMERY, C. J.