AMERICAN HARROW CO. *v.* DEYO.

1. CONDITIONAL SALES—CHATTEL MORTGAGES.

A contract for the sale of goods, by which the title of the goods is to remain in the vendor until paid for, will not be held to be a chattel mortgage because of a provision that the vendor may declare the indebtedness due, and take possession of the goods, when he deems himself insecure.

2. SAME—FILING CONTRACT OF SALE.

Placing such contract on file in the office of the township clerk after failure to pay and refusal to deliver possession was an unnecessary precaution, and did not change the character of the instrument.

Error to Genesee; Wisner, J.   Submitted October 20, 1903.   (Docket No. 154.)   Decided November 3, 1903.

Replevin by the American Harrow Company against Barden W. Deyo.   James L. Curry intervened as trustee in bankruptcy of defendant.   From a judgment for defendant on verdict directed by the court, plaintiff brings error.   Reversed.

Plaintiff is engaged in the manufacture and sale of hardware and agricultural implements in the city of Detroit. Defendant was engaged in the hardware and implement business in the village of Clio, Genesee county.   On October 31, 1901, the parties made a contract defining the terms and conditions by which the plaintiff was to deliver goods to defendant for sale.   The material parts of that contract read as follows:

"Said first party agrees:
"1. That it will, between January 1st, 1902, and October 1st, 1902, manufacture for and deliver to said second party on board cars at Detroit the goods designated, at the prices and terms and in the quantities specified, on pages 4, 5, 6, 7, 8, 9, and 10 herein, which are made a part hereof.
"2. To give second party the right to sell said goods in the natural course of retail trade during the season of 1902 in the following territory and trade tributary thereto, viz. : Clio, Michigan.
"3. That its goods shall be well made and of good material.
"Said second party agrees:
"1. To purchase said goods of first party, and pay it therefor the price agreed upon at the time and according to the terms indicated.
"2. To receive said goods, to pay all freight and charges thereon, to take proper care thereof, and to permit none to be lost, injured, or destroyed until fully paid for.
"3. To make the best endeavors to sell all goods possible in the territory designated, and to order from first party such additional goods as the trade demands; all sub-

sequent orders to be subject to the same terms and conditions as mentioned herein.

"4. That the title to and ownership of the said goods, and of all other goods hereafter ordered, and to the proceeds of sale thereof, shall be and remain in first party until the purchase price shall have been fully paid in cash.

"5. To remit to first party the proceeds (cash or notes) of the sale of goods purchased under this contract, as soon as sales are made; all notes to be good negotiable farmers' paper, indorsed and guaranteed by second party, with presentment, demand, protest, diligence in collection, notice of protest and nonpayment, waived by the makers and indorsers or guarantors. The receipt of said notes shall not be deemed payment, in whole or in part, but simply an acknowledgment of debt, and as collateral thereto; and any indorsement or negotiation of them by first party shall not make them such payment, nor shall the taking or negotiation of them, nor any judgments hereafter obtained thereon, waive any of first party's rights hereunder, until said notes or judgments are paid in cash to first party.

"6. That if, at any time, first party shall deem itself insecure on account of breach of this contract or other cause, it may, at its option, declare all indebtedness due and payable forthwith, and take possession of any goods purchased under this contract, and remaining unsold, or proceeds of sale of goods, and dispose of same in such manner as it may deem best, and, after deducting all expenses, apply balance of proceeds on said indebtedness. Such action shall not discharge or lease second party's obligation and agreement to pay the purchase price, except to the credits so applied.

"7. That no order shall be countermanded except at the option of the first party, and then only upon payment of 15 per cent. of the amount of the order, to liquidate damages sustained thereby."

Goods were delivered under it. Defendant failed to comply with its terms. Plaintiff demanded possession of the property which defendant had on hand, and possession was refused. The plaintiff thereupon filed the agreement in the township clerk's office, and on September 24, 1902, instituted this suit in replevin to recover goods in his possession. The value of the goods was $225.67. On October 1st following, defendant filed a voluntary petition

in bankruptcy. Defendant Curry was appointed trustee in bankruptcy, and intervened in this action. The court, holding the instrument to be a mortgage, directed a verdict for the defendant, who waived a return, and judgment was rendered in his behalf for the sum above named.

*Black & Roberts,* for appellant.

*Lee & Parker,* for appellees.

Grant, J. (*after stating the facts*). We think the learned circuit judge erred in his construction of the contract. It expressly provides that the title is to remain in the vendor until the purchase price shall be paid. This applies to the goods unsold by the defendant in the usual course of trade. There is nothing upon the face of the contract inconsistent with this provision. The right to declare indebtedness due before the time of credit expired, and to seize the goods, whenever the plaintiff deemed itself insecure, is entirely consistent with the retention of the title in the vendor. The fact that plaintiff, when trouble arose, placed the contract on file in the office of the township clerk, was an unnecessary precaution upon its part, and does not *per se* change the character of the instrument written upon its face. It is a circumstance of some significance in cases where the attempt is made to show that an instrument on its face conveying absolute title was in reality intended as a security. *Wessels* v. *Beeman,* 87 Mich. 481 (49 N. W. 483). Plaintiff, soon after filing the contract, brought this suit. Aside from the fact of filing it, the record contains nothing to show any intent to change its character or interpret its meaning.

It follows that the judgment must be reversed, and new trial ordered.

The other Justices concurred.