MISHAWAKA WOOLEN MANUFACTURING CO. *v.* STANTON.

1. SALES—FRAUDULENT CONVEYANCES—RESERVATION OF TITLE.
    A contract of sale containing a clause that "title to, property in, and right of possession to said goods, and to all other goods ordered by said second party of said first party within one year from the date hereof, shall be and remain in said first party until sold, and that upon sale thereof, the proceeds received therefor, whether notes, accounts or moneys, shall be and remain the property" of the seller

until the goods were paid for in cash, was not void as to creditors of the vendee, or as to his trustee in insolvency, upon grounds of public policy.

2. SAME—VALIDITY OF CONTRACT—FRAUD.

An order for goods containing a reservation of title to the merchandise sold by a clause in fine print at the bottom of the agreement, which the purchaser signed, was not invalid because his attention had not been called to the clause by the agent who took the order, where no artifices or deception was used to secure his signature, and such provision was printed in the same type as the rest of the contract in the body of the order above the buyer's signature.

Case-made from Kent; Brown, J. Submitted June 29, 1915. (Docket No. 114.) Decided September 28, 1915.

Replevin by the Mishawaka Woolen Manufacturing Company, an Indiana corporation, against Henry T. Stanton, trustee for creditors of Joseph D. Van Sickle, for certain merchandise. Judgment for plaintiff. Defendant brings case-made. Affirmed.

*Corwin & Souter* and *Abner D. Dilley,* for appellant.

*Boltwood & Boltwood* (*Buell & Lucas,* of counsel), for appellee.

STONE, J. This case is brought here by defendant, after judgment for plaintiff, upon a case-made, in an action of replevin. The case was tried by the court without a jury. The facts, being stipulated, were adopted by the court, and made a part of the finding. The material facts in the case are as follows:

For some time prior to April 10, 1912, Joseph D. Van Sickle had been engaged in the general merchandise business at Carson City, Mich., and on said date plaintiff's agent called upon said Van Sickle and took an order for goods in the usual way, on blanks furnished by plaintiff, a copy of which order appears in the record. The attention of Van Sickle, who signed

the order, was not called to any of the agreements printed on said order blank, and he did not know that the fine print at the bottom of the order blank contained an agreement whereby "the title to, property in, and right of possession of said goods should be and remain in said first party until sold, and that upon sale thereof the proceeds received therefor, whether notes, accounts, or moneys, should be and remain the property of said first party until said goods are fully paid for in cash." Nor was said Van Sickle ever instructed or requested to keep a separate account of sales made from said goods, or of the cash, notes, or accounts received therefor. The goods mentioned in said order were shipped by plaintiff and received by Van Sickle some time in the month of September, 1912, and were billed to him by plaintiff at $640.64. Said Van Sickle had previously purchased merchandise of the same or similar kind and quality from the plaintiff, parts of which remained in his stock at the time the goods in the above-mentioned order were received and placed in stock.

Upon receipt of the goods in question Van Sickle placed the same in his store, together with his stock previously purchased from plaintiff, as well as with other goods comprising his general stock of merchandise. Sales were made by Van Sickle from his general stock of merchandise, including goods received from plaintiff, in the usual course of trade, some goods being sold for cash, others were sold on credit and were charged in personal accounts, on which the customers paid on account from time to time, without reference to any particular item, and some merchandise was paid for by accepting in exchange butter and eggs, which in turn were sold for cash or on credit. No attempt was ever made by Van Sickle to separate the accounts or money received from the sale of goods ordered from plaintiff from money or accounts received from the

sale of goods bought of other merchants or manufacturers, and the same was mingled together at all times and used by Van Sickle as a single fund.

On April 12, 1913, said Van Sickle, being financially embarrassed, gave defendant a trustee chattel mortgage upon all his merchandise and fixtures, including the goods ordered from plaintiff, to secure all his creditors alike, including plaintiff. Said Van Sickle, previous to April 12, 1913, had sold $486.06 worth of the goods ordered from the plaintiff on April 10, 1912, having on hand $154.58 worth of said goods. He also had on hand $73.33 worth of similar goods bought from plaintiff previous to April 10, 1912. Van Sickle had paid plaintiff in full for all goods purchased previous to April 10, 1912, but had paid only $100 on the purchase price of the goods ordered April 10, 1912, leaving a balance of $540.64 due plaintiff on the goods so ordered. After accepting the trust under the mortgage and taking possession of the stock, defendant notified the various creditors of Van Sickle of the giving of the mortgage, and requested statements of their accounts in order that he might verify the same and make distribution of the proceeds of the property to be sold under the mortgage. He received a statement from plaintiff showing $555.63, including freight and interest, amounting to $14.99, due it from Van Sickle, and made one payment of 30 per cent. to all creditors, including plaintiff. The plaintiff then caused an investigation to be made, and upon learning that there were certain of said goods on hand, paid back a proportionate amount of the 30 per cent. received, and demanded the goods on hand from the trustee, claiming title under and by virtue of the clause in fine print at the bottom of the order, and, being refused possession by the defendant, acting as trustee under said mortgage, plaintiff brought replevin for said goods. It was agreed that the value of the goods replevied was

$154.56, and in case of judgment for defendant, return of the goods was waived, and a judgment in said sum was to be entered; and in case of judgment for plaintiff, then the damages were to be assessed at 6 cents, with costs to be taxed.

Under the heading of "Guarantee," the pertinent clause in said order, which was just above the signature of said Van Sickle, was as follows:

"It is agreed by and between the Mishawaka Woolen Manufacturing Company, party of the first part, and the undersigned orderer of the foregoing goods, party of the second part, that the title to, property in, and right of possession to said goods, and to all other goods ordered by said second party of said first party within one year from the date hereof, shall remain in said first party until sold by said second party, and that upon sale thereof the proceeds received therefor, whether notes, accounts, or moneys, shall be and remain the property of said first party until said goods are fully paid for in cash; that if payment for the same shall not be made when due, or if at any time before the same shall be fully paid for, said second party shall become insolvent, or shall, in the opinion of said first party, be in danger of insolvency, or if said first party shall, for any reason whatever, deem itself in danger of losing the price of said goods, then the said first party may reclaim, and take possession of so much of the said goods as shall remain unsold in the ordinary course of retail business, and may also take possession of any proceeds of sale of any such goods; that said second party shall not sell, ship, or reship, or in any manner directly or indirectly supply any retail or wholesale dealer with any such goods, nor dispose of them in any manner except in the ordinary course of business at retail sale, except with the express consent and approval of said first party previously obtained; that 'punched' goods are ordered subject to said first party's having them in stock; and that it does not guarantee quality or delivery. The party of the first part will not be responsible for delays by reason of strikes, fires, accidents, or other causes beyond its control."

188 Mich.—16.

Counsel for defendant filed certain requests for special findings of law. The conclusions of law by the trial court were as follows:

"(1) That Joseph D. Van Sickle, having signed the order, Exhibit A, he and his mortgagee are both bound thereby, even though he did not read the agreement in fine print above his signature; and the defendant's fourth and fifth requests are therefore refused.

"(2) That the delivery of all the goods by the plaintiff to Joseph D. Van Sickle under the contract order set out in the agreed statement of facts constituted a valid conditional sale.

"(3) That under the agreed statement of facts said Joseph D. Van Sickle was bound by the terms of the agreement that he entered into with the plaintiff, whether or not he knew the contents of the agreement he signed.

"(4) That the agreement signed by the said Joseph D. Van Sickle and the plaintiff clearly shows that the meaning of the agreement was that the title to the goods sold by the plaintiff to said Joseph D. Van Sickle under the contract was to remain in the plaintiff until the goods were sold by said Joseph D. Van Sickle in the ordinary course of retail trade.

"(5) That the position of the clause retaining title in the plaintiff of the goods unsold and the type in which such clause is printed are sufficient to bind said Joseph D. Van Sickle to the terms of the agreement.

"(6) That the rights of the defendant under the trust mortgage are exactly the same as were the rights of Joseph D. Van Sickle in regard to the goods covered by the conditional sale contract and that were not sold in the ordinary course of retail trade.

"(7) The vital question of law in this case seems to be whether or not an absolute sale is made and title passes to the purchaser, where the property is sold and delivered to the buyer for the purpose of resale. * * * Without comment upon the cases which hold that it is against public policy to validate a contract which seeks to withhold title, and at the same time gives to a vendee the right to make immediate resale in his own name, it is sufficient to say that the Supreme Court of our State has decided adversely to the de-

fendant's first, second, and third requests, and those requests are therefore refused.

"(8) I find, under the stipulated facts and the decisions of the Supreme Court of the State of Michigan, that the plaintiff is entitled to judgment in its favor of six cents damages, and costs to be taxed."

Proposed amendments were refused. and exceptions duly taken.

By appropriate assignments of error the following questions are presented by appellant:

(1) Can the vendor of merchandise sold expressly for resale retain title thereto, as against the creditors or subsequent purchasers, or incumbrances from the conditional vendee?

(2) Is the signer, or his legal representative, bound by the terms of a contract contained in fine print, which he did not read, under the circumstances here appearing?

1. In presenting the first question, counsel for appellant concede that personal property may be sold or contracted to a purchaser, to be by him retained and used for his pleasure or business, and that such contracts are valid and binding upon the creditors of, or purchasers from, the conditional vendee, and they call attention to nearly a score of such cases.

They claim, however, that it is equally well settled. by the great weight of authority throughout the United States, that personal property sold or delivered with the express understanding that the same is to be resold is an exception to the general rule applicable to conditional sales, and that such a sale or delivery of property is inconsistent with the continued ownership of the vendor, and is void as to creditors of or subsequent purchasers from said vendee. In support of this proposition counsel cite the dissenting opinion of Justice GRANT in *Excelsior Iron Works* v. *Lee,* 123 Mich. 499 (82 N. W. 207) ; *Ludden* v. *Hazen,* 31 Barb. (N. Y.) 650; *Mishawaka Woolen Manfg. Co.* v. *Westveer,* 191

Fed. 465 (112 C. C. A. 109), and a large number of cases from other States; also *John Deere Plow Co.* v. *Mowry,* 222 Fed. 1.

In reply counsel for plaintiff claim that upon this proposition the courts of this country may be divided into four classes:

(1) Those holding contracts of conditional sale void as against public policy, whether filed or recorded or not. Examples of such courts are those of Kentucky and Tennessee.

(2) Those holding such contracts valid between the parties and those having notice thereof, when they relate to specific articles, such as a horse, piano, etc., but void, as against public policy, when they relate to sales of merchandise intended for resale at retail, and that examples of such courts are those of New York, Indiana, Mississippi, and Texas.

(3) Those holding such contracts valid between the parties and those having notice thereof, no matter whether or not they relate to specific articles or to merchandise intended for resale, but invalid as against innocent purchasers, mortgagees, etc., unless filed or recorded in the proper clerk's office, and that examples of such courts are those of Ohio, Minnesota, North Dakota, and Wisconsin.

(4) Those holding such contracts valid, whether they relate to specific articles or to stocks of merchandise intended for resale, not only between the parties and those having notice thereof, but also as between the conditional vendor and an innocent purchaser or mortgagee of the vendee, or between the vendor and the attachment or judgment creditors of the vendee, or as between the vendor and the assignee in insolvency proceedings or trustee in bankruptcy of the vendee, irrespective of whether or not such contracts are filed or recorded; that examples of such courts are those of Michigan, Massachusetts, Vermont, Connecticut, and Arkansas; and that no court has gone further to sustain contracts of conditional sale than has this court, and that in no case has this court held such contracts void or against public policy, whether they related to the sale of merchandise intended for resale or only to a specific article intended for use by the vendee.

In support of this claim plaintiff's counsel cite the following cases: *F. J. Dewes Brewery Co.* v. *Merritt,* 82 Mich. 198 (46 N. W. 379, 9 L. R. A. 270); *Pratt* v. *Burhans,* 84 Mich. 487 (47 N. W. 1064, 22 Am. St. Rep. 703); *American Harrow Co.* v. *Deyo,* 134 Mich. 639 (96 N. W. 1055); *Edwards* v. *Symons,* 65 Mich. 348 (32 N. W. 796); *Hood* v. *Olin,* 68 Mich. 165 (36 N. W. 177); *Bunday* v. *Machine Co.,* 143 Mich. 10 (106 N. W. 397, 5 L. R. A. [N. S.] 475); *Worden Grocer Co.* v. *Blanding,* 161 Mich. 254 (126 N. W. 212, 20 Am. & Eng. Ann. Cas. 1332); *Wasey* v. *Whitcomb,* 167 Mich. 58 (132 N. W. 572); and many of our earlier cases. Many cases are also cited from other States.

We cannot here undertake to analyze all of the cases cited by counsel. We shall not refer to the many cases cited relating to the sale of personal property which has been attached as fixtures to the realty, as we are not dealing with that question. We shall refer to a few only of our own cases.

In *F. J. Dewes Brewery Co.* v. *Merrit, supra,* the plaintiff shipped beer to Lentz Bros. under the following contract:

"BIG RAPIDS, MICH., Dec. 18, 1888.
"It is hereby agreed by and between the F. J. Dewes Brewing Company, of Chicago, Illinois, and Lentz Bros., of the city of Big Rapids, Michigan,
"1. That the F. J. Dewes Brewing Company agree to ship to Lentz Bros., all beer ordered by them at the following price, $5.75 per barrel f. o. b., at Big Rapids, and that the right, title, and interest of said beer is to remain and rest in the F. J. Dewes Brewing Company until sold; and we, the said Lentz Bros., agree to take the said beer, and pay for the same, on above conditions."

Signed by the parties.
The brewing company under the above contract sent to Lentz Bros. two car loads of beer, which were received by them at Big Rapids. After they had sold

about one and one-half car loads, the remainder was
levied upon by the defendant, as sheriff of Mecosta
county, and was taken away by him upon an execution
in his hands, issued upon a valid judgment in favor of
a creditor of one of the members of the firm of Lentz
Bros. The circuit judge instructed the jury that, under
the terms of the agreement, the absolute title to the
beer passed at once to Lentz Bros. and was subject to
levy and sale under the execution, and a judgment in
replevin was entered for the defendant. In reviewing
that judgment this court said:

"Now, the contract was one which it was competent
for the parties to make, unless it was void as being
against public policy. The brewery company had a
right to say,—

" 'We will fill your order for beer, which you may sell as you
choose, but the title shall remain in us until you do sell, and then
the title will.pass to the purchaser, in which case we will trust
to your personal responsibility to pay us, at the rate of $5.75 a
barrel.'

"The effect of such contract was that the property
not sold remained the property of. the company, and
the firm owed them for all they had sold. * * *
This court has gone very far in sustaining conditional
sales, and has never declared them void, or different
from what the parties have intended by their agree-
ment [citing cases].

"The authorities cited above show the principles
upon which this court has proceeded in upholding such
contracts, and it is unnecessary to restate them here or
to review the decisions of other courts holding a dif-
ferent view."

In *Pratt* v. *Burhans, supra,* plaintiffs entered into a
contract with the Owosso Cigar Company by which
they agreed to. send and deliver to it a quantity of
cigars, the title thereto to be retained in plaintiffs until
paid for or sold, and, when sold, the accounts to belong
to them. The defendant, Burhans, had indorsed for
the Owosso Cigar Company. Plaintiffs shipped goods

to the cigar company, and shortly after it turned over all its stock, including the cigars shipped by plaintiffs, to the defendant, and gave him a bill of sale thereof, which the latter claimed was a *bona fide* purchase, in consideration of his indorsement. Defendant took possession of the goods. After demand and refusal plaintiffs brought replevin. In this court it was held that the sole issue for the jury was whether plaintiffs and the Owosso Cigar Company made a contract by which the title of the goods was to remain in the plaintiffs until they were paid for or sold in due course of trade. Justice GRANT said:

"The defendant did not buy them in the due course of trade; and therefore, if such a contract was made, the plaintiffs were entitled to recover. Such a contract is valid under the repeated decisions of this court, and we are not concerned with the decisions of other courts upon the subject. Those who purchased in the usual course of trade would take a good title. Those who did not purchase in the usual ·course of trade could not rely upon the bare possession of their vendor as conclusive evidence of title."

Counsel· for defendant claim that these two cases were really overruled by this court in *People* v. *Newman*, 99 Mich. 148 (57 N. W. 1073). We do not so understand it. The *Newman Case* did not involve the question of conditional sale. There the respondent was charged with selling beer at wholesale without having filed the bond and paid the tax required by law. His contention was that he was acting as agent of a brewing company, and he relied upon a contract, which appears in the opinion. The trial court instructed the jury that, under the terms of the contract there was practically a sale of the beer to the respondent, and that he was not an agent, but a purchaser. This court affirmed the conviction. In our opinion, the only cases in this court which might be claimed to be authorities against the application of the principle of conditional

sale, as heretofore stated, are *Choate* v. *Stevens,* 116 Mich. 28 (74 N. W. 289, 43 L. R. A. 277) ; *Van Den Bosch* v. *Bouwman,* 138 Mich. 624 (101 N. W. 832, 110 Am. St. Rep. 336) ; and *Coeling* v. *Green,* 163 Mich. 27 (127 N. W. 792). A careful examination of these cases discloses the fact that they fully recognize the principle enunciated by this court in the cases above quoted from. This becomes more evident by the fact that we have in the subsequent cases of *American Harrow Co.* v. *Deyo, supra, Bunday* v. *Machine Co., supra,* and *Worden Grocer Co.* v. *Blanding, supra,* care- fully distinguished the *Choate* and *Van Den Bosch Cases* from the former cases, and reaffirmed the principle established in the earlier cases. As we said in the recent case of *Atkinson* v. *Japink,* 186 Mich. 335 (152 N. W. 1079), whether a sale of personal property is absolute or conditional depends upon the contract of the parties. The distinction attempted to be made by counsel for appellant was also attempted in *Mishawaka Woolen Manfg. Co.* v. *Westveer, supra,* in the circuit court of appeals, a case arising under the law of Michigan. In that case Judge Warrington said:

"It is argued that decisions passing upon contracts in terms reserving title in articles delivered for personal use of the original taker, like machinery, pianos, and sewing machines, are distinguishable from decisions under similar contracts relating to articles delivered for purposes of resale. We do not discover that the Supreme Court of Michigan has made such a distinction, and it is difficult to see any sufficient reason for its existence. Both classes of articles are delivered into the possession and control of the first taker, without notice to any other person of any title or interest retained in them. They are alike chattels, which, in such instances, connote ownership and the right of sale in their possessor. Any one having dealings in respect to them with a person in possession and control, without notice and for a present valuable consideration, ought to secure the same rights with regard to the one class as the other."

It is true that in that case the court held that it was within the principles of *Choate* v. *Stevens* and *Van Den Bosch* v. *Bouwman, supra.* The contract in that case differed from the contract in the instant case, in that there was nothing in the agreement in that case which purported to give title to the vendor in any of the proceeds of sale, whether received in the form of notes, accounts, or cash. That fact is pointed out by the court. In that respect the form of contract was changed before it was signed by Van Sickle. It is true that in *John Deere Plow Co.* v. *Mowry, supra,* Judge Denison said:

"It is true that in the *Mishawaka Case* there was special reliance on the fact that the contract did not attempt to preserve to the vendor a substituted title to the proceeds when the goods were sold, and that in the present case this reservation is, in terms, made; but we are not satisfied, taking all the conditions together, to treat this as a controlling distinction."

After a careful review of our own decisions, we are of the opinion that the position of the plaintiff is the correct one, and that the trial court reached the correct conclusion upon the subject. The views of the defendant cannot prevail without overruling the repeated decisions of this court which have become fundamental in business transactions in this State. The legislature can readily change the rule by requiring the recording of such contracts, as in the case of chattel mortgages. (See Act No. 64, Pub. Acts 1915.)

2. It is claimed that the reservation of title was fraudulent because the clause was in fine print, and the attention of the purchaser was not called to it. A *fac simile* of the contract is attached to the record. An inspection shows that the clause complained of was in the same sized type as the remainder of the contract. It was in the body of the instrument just above Van Sickle's signature. There is very little

other printed matter in the contract. He should have read it, and if he did not do so, he alone is to blame. In the stipulation of facts it is stated that:

"Plaintiff's agent called upon said Joseph D. Van Sickle and took an order for goods in the usual way, on blanks furnished by plaintiff."

There was no attempt on the part of plaintiff's agent to conceal this clause from Van Sickle. The latter had purchased goods in previous years of the plaintiff. It is fair to presume that the previous orders had been upon similar blanks. Weight must always be given to the fact of the execution of a contract; and the presumption which exists in favor of written instruments cannot be overcome, except upon evidence from which an inference of duress, deception, misrepresentation, substitution, or artifice is clearly deducible. Such evidence is wanting here. *Sullivan* v. *Ross Estate,* 98 Mich. 570 (57 N. W. 821), citing *Campau* v. *Lafferty,* 50 Mich. 114 (15 N. W. 40) ; *Houghton* v. *Ross,* 54 Mich. 335, 336 (20 N. W. 66). See, also, *Pettyplace* v. *Manufacturing Co.,* 103 Mich. 155 (61 N. W. 266) ; *Bonnott Co.* v. *Newman Bros.,* 108 Iowa, 158 (78 N. W. 817).

We find no error in the record, and the judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.