(3 Misc. Rep. 535.)

### BRIDGER v. GOLDSMITH.

(Common Pleas of New York City and County, General Term. May 1, 1893.)

1. ESTOPPEL—FRAUD—CONTRACT OF SALE.
    One party to a contract is not estopped from asserting that the inducement to enter therein came from fraudulent representations of the other party, though the contract contains a provision expressly to the effect that there have not been any representations whatever made by such other party.

2. SALE—OF BUSINESS—CONCEALMENT.
    The sale of a business is vitiated by suppression of the books of account, and denial of their existence.

Appeal from equity term.

Action by Henry J. Bridger against Jonas G. Goldsmith. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before BISCHOFF, PRYOR, and GIEGERICH, JJ.

Hahn & Myers, (John C. Shaw and Emanuel J. Myers, of counsel,) for appellant.

Straley, Hasbrouck & Schloeder, (John A. Straley, of counsel,) for respondent.

GIEGERICH, J. This action was brought to procure a judgment rescinding the sale of the stock and good will of the business hereinafter mentioned, for an injunction restraining and enjoining the defendant from disposing of or collecting a promissory note, given in part payment of the purchase money, and for a recovery of the consideration paid to the defendant on the execution of the contract of sale. On the 16th day of March, 1891, the defendant, who was doing business under the name of the Goldsmith Piano & Organ Manufacturing Company, entered into an agreement in writing with the plaintiff, whereby the former sold to the latter three upright pianos, (Goldsmith make,) one caligraph machine, one rolling cylinder desk, and all other fixtures contained in the place of business of the defendant at 60 Broadway, excepting an iron safe with its contents, and certain claims, together with the good will of the business, for which the plaintiff agreed to pay $3,000, as follows: $2,000 upon the execution of the agreement, (which was paid;) $500 by executing and delivering to the defendant his promissory note, payable 6 months after date, the same to be indorsed by an indorser satisfactory to the defendant; and $500 by a similar note, payable 12 months after date. The agreement also contained a clause that the defendant shall not for the term of 20 years enter into or engage, directly or indirectly, in the business of selling pianos under the name of Jonas G. Goldsmith, or the Goldsmith

Piano & Organ Manufacturing Company, or in any other name of which the word "Goldsmith" is any component part, within the limits of the United States of America. At the request of the defendant the following clause, marked "Fourth," was put in the agreement of sale, viz.:

"Fourth. It is expressly understood and agreed between the parties hereto that the said party of the first part has not, in any manner or form stated, made or represented to the said party of the second part, for the purpose of inducing the sale of the said business or the making of this agreement, any statements or representations, verbally or in writing, in respect to the said business, other than that the said party of the first part has been engaged in the piano business in the city of New York since 1867."

After the contract of sale was made, the plaintiff took possession, and attempted to carry on the business. The plaintiff testified:

"I found that there was no business at all; was no business done at all or had been done. I tried to carry it on several weeks, or about six weeks, I think. I sent circulars out, I mailed mail matter, and I conducted the business the same as Mr. Goldsmith told me it had been conducted by him. Mr. Goldsmith told me, as to the conducting of the business, that it could be run by any one without experience at all,—by an inexperienced person. I asked him the nature of the business, and he said: 'Why, all you have to do is to advertise, and you get answers to the advertisements for the organs. You answer the letters that you receive, and so get orders.' That is just the way I carried on the business during the time I was in possession. I had an interview with Mr. Goldsmith at the end of about six weeks. * * * I told Mr. Goldsmith I had been defrauded by him, and I had been treated just the same by him as though I had fallen into the hands of green goods men. He put his thumb to his nose, and said, 'I am an old New York boy. You couldn't get over me. I was damned artful enough to put a clause in that agreement which will stop you from getting any satisfaction,'—or some words that finished like that; and he was going to strike me. I asked him that the contract be rescinded, and the money paid on account of the purchase be returned. I offered to return everything. He laughed, and refused to do it, certainly."

The plaintiff thereupon brought this action, alleging that the defendant did, with the intent to deceive and defraud the plaintiff, falsely and fraudulently represent to him that the said business, sold as above stated, was a profitable business, and that the net profits realized during 1890 had been in the average $50 or over on from 70 to 80 pianos sold during that year; that said business had been established since 1867, and had always been profitable, but that he had never kept any books, and could not tell the exact profits; that the business was easily worth $5,000 or $6,000, but that it had no inducement to him to continue it, because he was wealthy, and wished to retire from it, and devote himself to other matters, it being too small for him to bother with; that there was no doubt it would afford a good living for even an inexperienced person in the line; that it was good, sound, and substantial in every respect; and that he had orders for 20 organs which he would turn over to the plaintiff. That, relying upon the representations so made, the plaintiff purchased the stock and good will of said business, and paid defendant therefor $2,000 in cash, and executed two promissory notes for $500 each, payable, respectively, 6 and 12 months from date, indorsed by an indorser satisfac-

tory to defendant, which last note plaintiff thereafter took up and paid. That defendant further, in pursuance of a plan to cheat, deceive, and defraud the plaintiff, assured him that everything was all right in the matter incorporated in the fourth clause, above set forth, which was inserted at the last moment, under such circumstances that plaintiff was misled into signing the same. The defendant denied all allegations of fraud, but the trial judge believed the plaintiff's version of the transaction, as testified to by him and the witnesses who testified on his behalf, and their testimony amply sustains the finding of the learned judge that the sale of the said business was effected, and the consideration therefor obtained, by fraud; that the promissory notes which formed part of such payment were without consideration, and are void; that the defendant should be restrained from disposing of or collecting the said promissory notes; and that plaintiff have judgment against the defendant for $2,500, with interest. Judgment was entered accordingly, from which the defendant has appealed.

It is strenuously urged by the learned counsel for the appellant that the respondent is estopped by the provisions of the fourth section of the contract from asserting that he was induced to make the purchase provided for in the agreement by fraudulent statements. To give to the clause in question the effect the defendant claims for it would be not to discourage, but to put a premium upon, artful fraud, by allowing the guilty to escape with the fruits of their dishonesty provided they be shrewd enough to so frame the contract as to seal the lips of their victim when he attempts to complain in equity of his wrong. It would be a strange anomaly of the law, indeed, if a sharper could insist upon keeping the gag in the mouth of his victim, simply because the latter permitted himself to be gagged while his will was under the dominion of the former. It is a legal maxim that "nulla pactione effici potest ut dolus praestetur:" "I cannot effectually contract with any one that he shall charge himself with the faults which I shall commit; a man cannot validly contract that he shall be irresponsible for fraud. Neither will the law permit a person who enters into a binding contract to say, by a subsequent claim, that he will not be liable to be sued for a breach of it." Broom, Leg. Max. (6th Amer. Ed.) marg. p. 668, and cases cited. In the case of Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62, the parties entered into a written agreement for the sale of paper patterns for making dresses, which contained a clause stating that its stipulations contained the whole contract, and that any terms different therefrom, or supplemental thereto, should bind neither party. An action was brought to recover the price agreed to be paid for the patterns, and the defendant, by his answer, admitted the contract, and alleged fraud on the part of the plaintiff in procuring its execution. The plaintiff demurred to the answer, and it was held that as, by the demurrer, it was admitted that the representations of the agent were false, the contract based upon them was void. Van Brunt, P. J., in one of the opinions of the court, states what is undoubtedly the law of the case, in the following

language: "False and fraudulent representations, by which a party is induced to enter a contract, always avoid the same." In Wilcox v. Howell, 44 N. Y. 399, it was held that a mortgagor is not estopped from setting up fraud in procuring him to give a mortgage, by his own certificate or written declaration that the mortgage is valid, and no defense exists thereto, when such certificate was itself procured by fraud. In Railroad Co. v. Van Horn, 57 N. Y. 473, the defendant subscribed to plaintiff's stock. The subscription paper contained a declaration that he had paid down 10 per cent. at the time of subscribing. In fact, he never paid anything upon subscription. The general railroad act (Laws 1850, c. 140, § 4) provided that subscription to the capital stock is invalid when 10 per cent. of the amount subscribed has not been paid. In an action to recover the amount subscribed it was held that the subscriber was not estopped from denying such payment because of a statement in the subscription paper that 10 per cent. had been paid, and that a statute cannot be evaded by estoppel. "Any contract which has for its object the practice of deception upon * * * any party in interest as to the * * * financial condition, the nature of a transaction, * * * is void." Greenh. Pub. Pol. p. 152, rule 159, and cases cited. A party cannot come into court with a fraud upon his lips, and obtain relief. To such the halls of justice are not open. Id. p. 153; citing Gregory v. Haworth, 25 Cal. 653, 657. Any agreement calculated to suppress lawful testimony is void. Id. p. 441, rule 373, and cases cited; Runt v. Herring, (Com. Pl. N. Y.) 21 N. Y. Supp. 244. "The law seeks to mitigate the consequences of men's thoughtlessness and improvidence; and it does not, I think, allow its policy to be evaded by any language which may be inserted in the contract." Greenh. Pub. Pol. p. 498, rule 430. A contract waiving a substantial right to be asserted by a litigant is void. Id. p. 500, rule 433, and illustrations.

Thus both reason and authority clearly establish the principle that a party is not estopped from setting up the fraud which induced him to enter into a written agreement, although he thereby expressly agrees that the other party has not made any representation to induce him to enter into such agreement. Applying this principle to the facts found by the learned trial judge, "that said defendant further, during said negotiation, and to perfect said sale, with an intent to cheat, deceive, and defraud plaintiff in the certain bill of sale of said business to plaintiff, dated March 16, 1871, and further assuring him that everything was all right in the matter, incorporated a clause marked 'Paragraph 4th,' * * * with full knowledge that the same was false and untrue, and which was, with intent to deceive and defraud plaintiff, inserted at the last moment under such circumstances that plaintiff was deceived and misled into signing the same," it is apparent that the respondent is not estopped by the provisions of the contract in question from asserting that he was induced to make the same by fraudulent representations. The learned trial judge also found "that there was no means of ascertaining the profits of

said Goldsmith Piano & Organ Manufacturing Company's business at the time of the sale to plaintiff by defendant, except such information as defendant personally could give, or which could be disclosed by the books of said business; that, however probed, the profits of said business could not have been ascertained except through information given by defendant and the books of said business;" "that defendant, further, during said negotiations, falsely, and with intent to deceive and defraud plaintiff into purchasing said business, suppressed and denied the existence of the books of account kept thereof, which would have shown said business to have been a losing one from its establishment." This fraudulent suppression and concealment of fact, found by the trial judge. vitiates the contract of sale; for it is a well-established rule that fraud may consist in the concealment of what is true, as well as in the assertion of what is false, if the means of information are not equally accessible to both, but exclusively within the knowledge of one of the parties, and known to be material to a correct understanding of the subject. Getty v. Donnelly, 9 Hun, 603; Clark v. Bamer, 2 Lans. 67; 2 Kent, Comm. 482; 3 Wait, Act. & Def. 429.

The defendant also insists that the trial judge erred in refusing to find certain requests as proposed by him. Upon the most careful examination of the record we find that the refusals to so find were proper, and that the evidence warranted the findings of fact of the court, which, in addition to those already stated, show these facts: That defendant, on and prior to March 16, 1891, was the proprietor and owner of the business sold, owned, and conducted as the Goldsmith Piano & Organ Manufacturing Company, which was established in September, 1889, and that he was in business under the name and style of the Goldsmith Piano & Organ Manufacturing Company, and that the assets of said business on March 16th, the date of the sale, consisted of the stock in trade of three pianos, office furniture, and appurtenances and good will of said business; that defendant had sold during the year 1890 in said business 14 pianos and 19 organs only; that from the establishment of said business to the 16th day of March, 1891, there had been sold 27 pianos and 23 organs only; that on and before March 16, 1891, plaintiff was wholly inexperienced in the piano business, of which fact defendant had full knowledge; that books of account had been kept of said business by defendant, or his agents, showing the sales in pianos and organs, and the profits and losses in said business, from its establishment to the date of the sale to plaintiff of it by defendant; that a duplicate of said books showing the sales of instruments and their prices was kept by Edward B. Spaulding, who was employed by defendant as general manager of said business from its establishment to March 7, 1891; that the defendant carried on his business at the city of New York by extensively advertising, in various journals and papers, pianos and organs for sale, and soliciting from the public trade and patronage by means of said advertising; that the place of business of the defendant at the city of New York had no patronage incident thereto, but was only an office for the transac-

tion of business; that, during the negotiations, defendant falsely, and with intent to deceive and defraud plaintiff into purchasing said business, represented that the Goldsmith Piano & Organ Manufacturing Company had been established since 1867; that it was a large and profitable business; that he had made lots of money in it, and that he was anxious to give it up because it was too small for him, as he was dealing in real estate, and had no desire to continue the piano business; that defendant further, during said negotiations, falsely, and with intent to deceive and defraud plaintiff into purchasing said business, represented to him that during the year 1890 there had been between 70 and 80 pianos sold, on which there was a profit, after all expenses were paid, of $50 on each instrument sold; that defendant further, during said negotiations, falsely, and with intent to deceive and defraud plaintiff into purchasing said business, represented and stated that he had kept no books or record of the business done by said Goldsmith Piano & Organ Manufacturing Company, and for that reason he could not tell the profits of said business; that plaintiff relied upon the false and fraudulent representations made by defendant in purchasing said business, and undertook, after he had purchased the business, to continue it as it had been conducted before; that defendant expended in and about the said business from September, 1889, to December, 1890, the sum of $5,000 for salary, postage stamps, office rent, circulars, and gas fixtures; that before the suit was brought, and within six weeks after the sale, and at once upon discovery by plaintiff of the fraud of defendant, plaintiff demanded of defendant that the sale be rescinded and the consideration returned, and offered to return to defendant all the stock, fixtures, and property conveyed to him, which defendant declined to do, and which tender was renewed on the trial; and that, by reason of such false and fraudulent representations and suppressions of fact, plaintiff was deceived and defrauded by defendant into purchasing said business, and was damaged thereby to the amount of the consideration paid, and interest. We have examined with great care the other exceptions taken at the trial and points raised on this appeal, and fail to discover the existence of any substantial errors which require the reversal of the judgment appealed from. The judgment, in our opinion, should therefore be affirmed, with costs.

PRYOR, J., concurs.

BISCHOFF, J. It is apparent that defendant's suppression of his business books deprived plaintiff of every reasonable means of ascertaining whether or not defendant's representations concerning the duration, extent, and worth of his business were true; hence the rule that one to whom the means of ascertaining the facts of a particular representation were offered, of which he did not avail himself, is estopped because of his own laches from subsequently complaining that the representation was false, does not apply. The fact that defendant required the interpolation of the so-called "Fourth" clause of the agreement, which is annulled by the judgment

appealed from, furnishes in itself a corroboration of plaintiff's claim that he was induced to execute the agreement, and to conclude the purchase of defendant's business, by fraud. "Acta exteriora indicant interiora secreta." Treated as a contract, it is, in effect, that plaintiff will not seek redress if it should subsequently transpire that he was defrauded by means of defendant's representations, which induced him to conclude the purchase, and the falsity of which was not disclosed to him. Such a contract is repugnant to justice, against public policy, and void. Bell v. Leggett, 7 N. Y. 176, 179; Sedgwick v. Stanton, 14 N. Y. 289, 291; Ray, Contract. Lim. c. 1, § 2, p. 6. As an estoppel the clause is equally unavailing. The doctrine of equitable estoppel, or estoppel in pais, is invoked to prevent deception and to promote justice. Its use in the consummation of a fraud or the perpetration of injustice and oppression will not be tolerated. Dickerson v. Colgrove, 100 U. S. 578, 580; Royce v. Watrous, 73 N. Y. 597. It is a constituent of an equitable estoppel that the party seeking its aid was, while acting in good faith, and with reasonable care and diligence, misled by the representations or conduct of the party against whom it is sought to be enforced. Bigelow, Estop. p. 480; 7 Amer. & Eng. Law, p. 15; Blair v. Wait, 69 N. Y. 113, 116. This element is absent from the case at bar, the facts being conclusive that, despite plaintiff's admission or alleged agreement to the contrary, defendant was aware that in concluding the purchase of his business plaintiff proceeded in reliance upon his representations theretofore made concerning it.

I agree that the judgment should be affirmed, with costs.