[No. 2029, Aug. 23, 1917.]

## BERRENDO IRRIGATED FARMS CO. v. JACOBS et al.

(Rehearing Denied Nov. 12, 1917.)

### SYLLABUS BY THE COUURT.

1. 'Where a party is induced to enter into a written contract by false and fraudulent representations made to him by the other party to the contract, such party perpetrating the fraud cannot seal the mouth of the other party as to such fraud, by inserting in the contract a clause which reads, "No promise, stipulation or representation not herein contained has been made by the company to the purchaser," and the fraud may be shown whether the action is for rescission or for damages.                                    P. 296

2. Where a party is induced to purchase lands by reason of false and fraudulent representations made to him, and such representations were made in prospectuses, letters and orally, it is not proper for the court to permit such parts of the prospectuses to go to the jury, which have no relation whatever to the false representations upon which the party relied, and which induced him to enter into the contract.
                                                    P. 299

3. Where representations are proven, but there is no evidence offered tending to show that such representations were false, the court should, upon motion, withdraw the same from the jury.                                    P. 302

4. Where a party contracts to purchase certain real estate, and the seller represents that arrangements have been made with a company furnishing electricity at a given rate to pump water for the irrigation of such land, and the buyer is fully informed as to the arrangement made in that regard, and is given certain shares of stock in a water users' association, and such association has the legal right to compel performance of such contract, but voluntarily abandons the same, and the buyer makes no effort to enforce his rights under such contract, he is in no position to claim damages from the seller by reason of such default. P. 304

5. If the person to whom the false statements are made did not rely on them but investigates for himself, and acts and relies on his own knowledge, no fraud exists, if the falsity of such representations was or could be discovered thereby, and if no artifice was resorted to to prevent him from discovering the truth. P. 304

6. Where the claim for damages is based upon various alleged misrepresentations, some of which affect only a portion of the land purchased, and others affecting the value of the land in certain respects, it is not proper for the court to charge the jury that if it found that any one of the alleged false representations were made, that defendant (cross-complainant) would be entitled to the same relief as if all had been made and relied on as charged. P. 305

Appeal from District Court, Chaves county; McClure, Judge.

Action by the Berrendo Irrigated Farms Company against George Jacobs and Elizabeth Jacobs, with counterclaim by defendants. Judgment for defendants for $500 on their counter-claim, after a remittitur of $499 had been filed, and plaintiff appeals. Reversed and cause remanded.

Reid & Hervey, of Roswell, for appellants.

Party must elect to either affirm or disaffirm the contract. He cannot select that part which is beneficial and

reject the remainder and when he brings suit for damages for false and fraudulent representations he. affirms in toto and cannot change terms of written contract.

1 Page on Contracts, paragraph 138, 131 Guthrie & Western Railroad Company v. Rhodes, 21 L. R. A. (N. S.) 490 (Okla.); Grinrod v. Anglo-American Bond Co., 85 Pac. 891, 894; Buffalo Pitts Co. v. Shriner, 82 Pac. 1016; Goin v. Cincinnati Realty Co. 200 Fed. 252; Cole v. Smith, 58 Pac. 1086 (Colo.); McNish v. Northwest Threshing Co., 138 Am. St. 803 (Okla.); Elliott on Contracts, Paragraph 1620, Paragraph 5000; Pitcain v. Phillip Hess Co., 125 Fed. 113; Fox v. Windes, 30 S. W. 323; Collison v. Ream, 144 N. W. 1050 (Neb.); American Car & Foundry Co. v. Smock, 91 N. E. 751; Selden v. Myers, 20 How. 509; Yoemans v. Bell, 45 N. E. 553 (N. Y.)

Evidence of fraud must be material, clear, conclusive and satisfactory.

West Florida Land Co. v. Studebaker, 19 So. 176 (Fla.); Southern Development Co. v. Silva, 125 U. S. 247; Smith on Fraud, Par. 281, 264; Redwood v. Rodgers, 53 S. E. 6 (Va.); Max Meadows Land Co. v. Brady, 22 S. E. 845 (Va.); Hubbard v. McLean, 99 N. W. 465 (Wis.); Braddock v. Louchheim, 87 Fed. 287; Alter v. Bank of Stockham, 73 N. W. 667 (Neb.); Wessels v. Beeman, 49 N. W. 483 (Mich.); Freeman v. Topkis, 40 Atl. 498 (Del.); Pittsburg L. & T. Co. v. Northern C. L. Ins. Co., 140 Fed. 893; 1 Elliott on Contracts, Par. 88; Hollister v. Loud, 2 Mich. 309; Buckinham v. Thompson, 135 S. W. 652 (Tex.).

Representations must be shown to be false and relied upon.

Page on Contracts, Par. 107; Southern Devleopment Co. v. Silva, 125 U. S. 247; Wegerer v. Jordan, 101 Pac. 1066 (Cal.); 1 Elliott on Contracts, Par. 87; Southern Express Co. v. Fox & Logan, 133 Am. St. Rep. 241; 131

(Ky.) 257; 1 Elliott on Contracts, Par. 89; Buckinham v. Thompson, 135 S. W. 652 (Tex.).

Certain representations relied on are not actionable.

Lambert v. Crystal Spring Land Co., 27 S. E. 462 (Va.) ; Watkins v. Improvement Co., 22 S. E. 554 (Va.) ; Max Meadows Land Co. v. Brady, 22 S. E. 845 (Va.).

L. O. Fullen and W. A. Dunn, both of Roswell, for appellees.

An action for deceit is in tort.   29 Cyc. 86.

Parol evidence of fraud is admissible though it may tend to contradict the terms of the writing.

Moore v. Harmon, 41 N. E. 599; Leicher v. Keeney, (Mo.) 72 S. W. 145; Barrie v. Miller, (Ga.) 30 S. E. 840; Herring v. Mason, (Tex.) 43 S. W. 797; Hicks v. Stevens, 121 Ill. 186; Smith on Law of Fraud, Sec. 265, and note 37.

The whole transaction involving the alleged fraud is admissible.

Ward v. Cook, (Mich.) 122 N. W. 785; McDonald v. Smith (Mich.) 102 N. W. 668; Perkin v. Embry (Ky.) 72 S. W. 788; Boltz v. O'Connor (Ind.) 90 N. E. 496; Elerick v. Reid, (Kan.) 38 p. 814.

### OPINION OF THE COURT.

ROBERTS, J.   This action was instituted in the lower court by the Berrendo Irrigated Farms Company against the appellees to recover on a written contract for the purchase price of a certain tract of land sold by appellant to appellees. Appellant claimed of appellees the sum of $1,950, with interest thereon at 8 per cent. from February 21, 1914. Appellees in their answer admitted that they executed the contract sued on and that the sum claimed was due from them to the appellant, but, in order to defeat the appellant's recovery of this amount, they al-

leged that they had ·been damaged in the sum of $4,276.80,
by reason of the fraudulent representations of the appellant
which induced them to enter into the contract.    These
alleged representations, as stated in the complaint, were
that said land was good and first-class orchard land, suit-
able for peach trees and especially adapted to the grow-
ing of apples; that the soil was deep and fertile; that said
tract contained 20 acres, and could all be easily irrigated
and planted to apples; that the plaintiff could and would
transfer with the land a good and sufficient water right, ·
adequate for the complete irrigation thereof; that the water
for such purpose could and would be supplied from wells,
from which it would be necessary to pump, but that ap-
pellant had completed arrangements with the Roswell
Gas & Electric Company to furnish electric power for
pumping purposes, whereby sufficient water for the irri-
gation of said premises would be supplied and delivered
thereon without cost for the year 1913 and thereafter
for a term of 10 years, at a charge of $1.25 per acre-foot;
that two acre-feet of water would be sufficient for the irri-
gation of any and all crops that might be growing on said
land.

The plaintiff in answer to the deefndant's counter-claim
admitted that it represented to the defendant that the land
described in the complaint was good orchard land suitable
for peach trees and adapted to the growing of apples;
that the soil was fertile, and that the tract contained 20
acres, and that the plaintiff could and would transfer
with .said lands a good and sufficient water right thereto
adapted for the complete irrigation thereof; that the water
for such purposes could and would be supplied from wells
which it would be necessary to pump, and that two acre-
feet of water would be sufficient for the irrigation of or-
dinary annual crops. ` The plaintiff denied all other mat-
ters and things set forth by the defendants, and especially
denied that the plaintiff had represented that it had com-
pleted arrangements with the Roswell Gas & Electric Com-
pany to furnish electric power for pumping purposes where-
by sufficient water for the irrigation of said premises
would be supplied and delivered without cost for the

year 1913 and thereafter for a period of ten years, at $1.25 per acre-foot, or that two acre-feet of water would be sufficient to irrigate any and all crops that might be planted and grown on each acre of the land.

The plaintiff in its answer by way of new matter alleged that in May, 1913, on account of the complaint of the defendant George Jacobs that the tract did not contain full 20 acres, and that the arroyo and sloping land bordering on one edge of the tract made some of the land hard to irrigate, and that part of the land was likely to overflow during the wet seasons, it paid the defendant the sum of $300, in full settlement of his claim. This the defendants denied in their reply and set out that the $300 was paid only in consideration of the shortage of land.

The contract sued on in this case contained the following paragraph:

"No promise, stipulation or representation not herein contained has been made by the company to the purchaser."

In support of their allegations of fraud, the appellees offered in evidence a quantity of printed literature put out by the appellant for the purpose of advertising this land. The representations contained in the literature had to do with climate, with the water supply and sources of water, from the artesian wells, and contained statements as to the products that could be grown upon the land, and stated that 40 acres of this land planted in fruit trees would be worth $40,000 in six years. Among other statements, the prospectus said the land rivaled the land in the famous Valley of the Nile in fertility and productiveness. These prospectuses were permitted by the court to go to the jury over appellant's objection. After the appellees rested their case, appellant moved to strike out certain portions of the printed literature on the ground that appellees had offered no evidence to show the falsity of the representations therein contained. This motion was overruled by the court. The case was submitted to the jury under instructions from the court, which returned a verdict in favor of appellees on their counterclaim and awarded appellees damages to the amount of $500, over and above

the amount claimed by appellant and for which it had sued. Appellant filed a motion for a new trial and the court ordered appellees to file a remittitur in the sum of $499. This was done and judgment was rendered on the verdict in the sum of $1 and costs in favor of appellees. Other facts will be later stated in the discussion of the various points.

[1] The first proposition urged by the appellant as ground for reversal is that appellees had the right to affirm or disaffirm the contract, and that by electing to sue for damages they affirmed the contract, hence it was not competent for them to introduce evidence to contradict, change, or add to the terms plainly incorporated in and made a part of the written contract. That by reason of the clause contained in the contract as follows:

"No promise, stipulation or representation not herein contained has been made by the company to the purchaser."

—it was not competent for the appellees to offer in evidence any representation alleged to have been made by the agents of appellant not contained in the written contract. It is proper here to state that the false representations upon which appellee relied were representations made to them by the agents of appellant by oral and written communications and by prospectuses issued by the company, and their right to recover was not based upon fraudulent representations alleged to have been contained in the written contract.

We cannot agree with appellant's contention. Where one party to the contract has perpetrated a fraud upon the other, by means of which the latter was induced to enter into the contract, he cannot be precluded from seeking redress by a provision inserted in the contract by the party perpetrating the fraud, designed to shut the mouth of the adverse party as to such fraudulent representations which led up to the making of the contract. And this is true, whether the action be for rescission of the contract or for damages for deceit. That this is the true rule is illustrated by the following cases, to which brief reference will be made. In the case of Bridger v. Gold-

smith, 3 Misc. Rep. 535, 23 N. Y. Supp. 9, the action was instituted to rescind the sale of the stock and good will of a business, and to restrain and enjoin the defendant from disposing of or collecting a promissory note given in part payment of the purchase money, and for the recovery of the consideration paid to the defendant on the execution of the contract of sale. The contract contained the following provision:

"Fourth. It is expressly understood and agreed between the parties hereto, that the said party of the first part has not, in any manner or form stated, made or represented to the said party of the second part, for the purpose of inducing the sale of the said business or the making of this agreeing, in any respect, to the said business, other than that the said party of the first part has been engaged in the piano business in the city of New York since 1867."

In disapproving of the contention urged that the plaintiff in the case was estopped from establishing any false representations not contained in the contract, the court said:

"It is strenuously urged by the learned counsel for the appellant that the respondent is estopped by the provisions of the fourth section of the contract from asserting that he was induced to make the purchase provided for in the agreement by fraudulent statements. To give to the clause in question the effect the defendant claims for it, would be not to discourage, but to put a premium upon, artful fraud, by allowing the guilty to escape with the fruits of their dishonesty, provided they be shrewd enough to so frame the contract as to seal the lips of their victim when he attempts to complain in equity of his wrong. It would be a strange anomaly of the law, indeed, if a sharper could insist upon keeping the gag in the mouth of his victim simply because the latter permitted himself to be gagged while his will was under the dominion of the former. It is a legal maxim that, nulla pactione effici potest ut dolus praestetur, 'I cannot effectually contract with any one that he shall charge himself with the fault which I shall commit,' a man cannot validly contract that he shall be irresponsible for fraud. Neither will the law permit a person who enters into a binding contract to say, by a subsequent claim, that he will not be liable to be sued for a breach of it."

Later this case was taken by appeal to the Court of Ap-

peals and the judgment was affirmed, 143 N. Y. 424, 38 N. E. 458, the court saying.

"There is evidence in the case tending to show that the plaintiff voluntarily assented to this stipulation, after having been advised by his counsel that it would have the effect of precluding him from subsequently alleging fraud in the transaction, even though it existed in fact. This provision is not a covenant in any proper sense of that term. Indeed, it can scarcely be considered as any part of the agreement at all. It does not relate in any manner to the subject-matter of the contract. It was a mere statement in the nature of a certificate as to a fact. It did not relate to the property or to the terms of the sale, or the payments, but to the absence of all fraud from the transaction. The clause cannot be given any greater effect than if it had been written upon a separate paper after the execution of the contract and signed by the parties. The question now is whether it can be given the effect claimed for it by the learned counsel for the defendant, to preclude the plaintiff from alleging fraud in the sale and pursuing in the courts the remedies which the law gives in such cases. It cannot operate by way of estoppel for the obvious reason that the statements were false, to the defendant's knowledge. He may, indeed, have relied upon its force and efficacy to protect him from the consequences of his own fraud, but he certainly could not have relied upon the truth of any statement in it. A mere device of the guilty party to a contract, intended to shield himself from the results of his own fraud, practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on the part of the plaintiff, that, however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the transaction or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. I assume that there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may nevertheless contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing."

To the same effect see, also, Hofflin v. Moss, 67 Fed. 440, 14 C. C. A. 459; Strand v. Griffith, 97 Fed. 854, 38 C. C. A. 444. The latter case was a suit for damages and of course, an affirmance of the contract. The federal cases cited were both decisions of the. Circuit Court of Appeals of the Eighth Circuit. In 9 Cyc. 474, it is said:

"The law will not give effect to a stipulation intending to grant immunity to iniquity and fraud."

[2] The next proposition to be considered is whether or not the court committed error in permitting the prospectuses and advertising matter of the appellant to be submitted in bulk to the jury. Many of the statements contained in this literature had no relation whatever to the alleged false representations upon which appellees alleged they relied, and· which formed the basis of their claim for damages. The prospectuses painted the lands in question in very glowing and highly colored terms. Appellant objected to the introduction in evidence of these prospectuses, and at the conclusion of appellees' evidence asked to have those portions thereof stricken⁓which had no relation whatever to the alleged false representations of which appellees were complaining. The court overruled this motion.

It is fundamental that in an action based upon fraudulent representations the complaining party is entitled to introduce any relevant evidence tending to prove the charge of fraud, but in cases of this character a party is no more entitled to introduce evidence which has no tendency to establish the fraud than he is entitled in any other cases to introduce evidence having no relation whatever to the issue. And, further, appellees in this case made no attempt to show that any statement contained in the prospectuses to which appellant objected were false. Fraud is never to be presumed when established by irrelevant evidence, and, while more latitude is allowed in the admission of evidence tending to show fraud, the law demands that such evidence be material and relevant, and that the fraud be established by clear, conclusive, and satisfactory proof.

As an example of the representations made in the prospectus, we will insert the following as to the water supply:

"It is said that the watershed of the Pecos Valley covers about one-third of the territory of New Mexico and instead of the water flowing down open rivers that it is stored underneath the ground, which furnishes the supply for the artesian wells on and around the Berrendo Farms; that nearly 800 artesian wells are at present spouting huge volumes of water whenever desired."

In Smith on Fraud, par. 281m, the author says:

"To manitain a defense based on fraudulent representations, the facts must be proved just the same as if an action for deceit had been brought by the defendant."

Wessels v. Beeman, 87 Mich. 481, 49 N. W. 483:

"In the investigation of fraud it is usual to permit a wide range of investigation of matters that will throw light upon the question at issue, but irrelevant testimony is no more admissible in such cases than in any other investigation or trial of civil actions at law."

Freeman v. Topkis, 1 Marvel (Del.) 174, 40 Atl. 948:

"While the law allows great latitude in the admission of evidence tending to throw light on alleged fraudulent transactions, it also demands the closest scrutiny of the evidence thus admitted."

Smith on Fraud, par. 264:

"Where it is sought to recover for fraudulent representations in regard to the sale of land, there should be the clearest proof of the fraudulent representations, and the evidence must show that the contract was founded upon them."

Redwood v. Rodgers, 105 Va. 155, 53 S. E. 6:

"The charge of fraud is one easily made, and the burden is upon the party alleging it to establish its existence, not by doubtful and inconclusive evidence, but clearly and conclusively. Fraud cannot be presumed. It must be proved by clear and satisfactory evidence. It is true that fraud need not be proved by positive and direct evidence, but may be established by facts and circumstances sufficient to support the conclusion of fraud. But whether it be shown by direct and positive evidence, or established by circumstances, the proof must be clear and convincing, and such as to satisfy

the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge."

In Buckingham v. Thompson (Tex. Civ. App.) 135 S. W. 652, which was an action of deceit based upon representations contained in certain pamphlets put out by the defendant for the purpose of advertising the land, the court says:

"The pamphlets * * * consist in large part of expressions laudatory of these lands so extraordinary that no man of ordinary sense could be supposed to take them and act upon them at their face. We refer to such statements as that the land was richer than the valleys of Southern California; that it could not be kept from becoming a land of gold; that it was a land of fruit and flowers and happy homes; that independence was to be had there for the asking; that all eyes were on Texas, particularly Southwest Texas; that a home there would treble and quadruple in value within two years, because the natural resources are there, and the tide of immigration was turned that way, and it was a full tide. Due reference was made to the Garden of Eden, Monte Cristo and Aladdin's Lamp." "Held, that such statements were mere expressions of opinion, and hence would not support an action for deceit."

The case of West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 South. 176, is almost identical to the present case in this regard. In this connection the court said:

"Upon the trial, the plaintiff offered in evidence an article which had been published in a newspaper at West Milton, Ohio, by Dr. Chiles, the defendant's agent, and by whom the misrepresentations sued upon were alleged to have been made. This article was an advertisement of the lands for which the said Chiles was agent. It does not contain any of the said representations about said lands which are alleged in the declaration to have been made by him, but contains other statements, some of which are perhaps mere expressions of opinion, which are never considered as fraudulent, so as to be actionable, while others are statements of fact. It is stated in said article that he invites the reader 'to the healthiest and most delightful climate under the sun'; that it was 'the country for them and their families;' that they could 'raise more there from 20 acres with less labor than from 160 acres' in Ohio; that they could 'pasture stock the year round, and save expense of feeding;' could get 'from two to three crops of farm produce each year;' could get 'good prices and good markets,' 'fruits of all kinds,' and 'vegetables every month in the year.' The advertisement further stated that there was 'no such thing as malaria or fevers of any

kind;' that 'the water is pure, soft, sweet, and plenty of it; no mosquitoes, and but few common flies;' 'no snakes;' and other like representations  *  *  *  They gave a very glowing description of the country, but we do not think they are so highly improbable upon the face of them as to import willful fraud or misrepresentation.    When the article was offered in evidence, it was objected to upon the ground of irrelevancy.    The plaintiff made no statement as to his intention to demonstrate the relevancy of the representations by showing their falsity by further proof in the case. In cases of fraud, large latitude is allowed in the admission of evidence, and, where fraud in the purchase or sale of property is in issue, other frauds of like character committed by the same parties at or near the same time are admissible. The admissibility of such evidence 'is placed on the ground that where transactions of a similar character, executed by the same parties, are closely connected in time, the inference is reasonable that they proceed from the same motive.' Lincoln v. Chaplin, 7 Wall. 132 [19 L. Ed. 106]; Butler v. Watkins, 13 Wall. 456 [20 L. Ed. 629]; Castle v. Bullard, 23 How. 172 [16 L. Ed. 424], and cases collated in note; 8 Am. & Eng. Enc. Law, 655.   As the statements in the newspaper article do not of themselves import fraud upon the face of them, and as there is no proof in the case to show that they were false and fraudulent representations, they are not included within the principle stated, but were irrelevant to the issues of the case, and, under the circumstances stated, should have been excluded as irrelevant."

[**3**]   The court should have sustained appellant's objection to the introduction of this evidence when it was offered, unless appellee's counsel had stated that they would prove the falsity of the representations contained in the advertising matter which they were offering in evidence.   Certainly, however, the court was clearly in error when it refused to sustain appellant's motion to take this evidence from the jury at the conclusion of appellee's evidence, on the ground that appellee had failed to show the falsity of the representations.   Unless the representations contained in the circular were shown to be false by competent evidence, they afford no proof in support of the charge of fraud.   Many of these representations were as to the future.   For example, the statement that the land would be worth $1,000 an acre in six years if planted to orchard, and other like glowing pictures as to what would happen and the prospects of the future.   As a general rule false representations upon which fraud may be predicated must be of existing facts, or facts which previously existed,

and cannot consist of mere promises or conjectures as to future acts or events, although such promised results do not materialize.    20 Cyc. 20.    The above or like statements going to the jury, upon which appellee had no right to rely, may have been very prejudicial indeed to appellant. The court should have permitted only those portions of .the prospectuses to go to the jury which were legitimate evidence.

It is well said that fraud must be established by the party alleging it, and in order to do this, the party must show not only that repreesntations were made, but he must go further and show that these representations were false. In Page on Contracts, par. 107, it is said:

"To constitute fraud, the representations must be false when made.    This is so obvious that the question is rarely considered specifically."

When the appellees, after having submitted to the jury the advertising matter in question, failed to establish the falsity of the various statements therein contained, the court should, upon motion of the appellant, have withdrawn from the jury such portions of these various circulars as appellees had failed to establish were untrue.    For this reason, the case must be reversed, but we deem it advisable to briefly discuss some of the remaining propositions argued, which may arise upon a second trial.

In their counter-claim, appellees alleged that appellant represented:

"That the plaintiff could and would transfer with the land a good and, sufficient water right thereto adequate for the complete irrigation thereof; that the water for this purpose could and would be supplied from wells, from which it would be necessary to pump, but that plaintiff had completed arrangements with the Roswell Gas & Electric Company to furnish electric power for pumping purposes, whereby sufficient water for irrigation of said premises would be supplied and delivered thereon wthout cost for the year 1913 and thereafter for a term of 10 years, at a charge of $1.25 per acre-foot; that two acre-feet of water would be sufficient for the irrigation of any and all crops which might be grown upon said land."

After setting out the above and other facts denying the

truth of the other representations, the counter-claim proceeds:

"That water could not be obtanied at $1.25 per acre-foot for the term of 10 year's through any arrangements made by plaintiff or otherwise."

[4] From the evidence it appears that appellant had caused to be formed an association known as the "Berrendo Water Users' Association," made up of the owners of the lands under the Berrendo project, and that each owner acre of land purchased; that this association with each acre of land purchased; that this association had entered into a valid and forcible contract wtih the Roswell Gas & Electric Company for the furnishing of electricity for pumping purposes at such a price that the water would cost the sum stated. There is some evidence to show that, prior to the purchase by appellee of the land in question, Jacobs, the husband, read over the contract between the Roswell Gas & Electric Company and was thoroughly familiar with the plan by which the water was to be supplied. There is also evidence to the effect that the water users abandoned the contract. In this connection, it is sufficient to say that, if it be true that appellant delivered to appellees shares of stock in the Water Users' Association, and that such association was legally entitled to demand performance of this contract and to require the supplying of current at the price therein stipulated, and that appellee, in conjunction with the other water users voluntarily abandoned the contract, they would be in no position to complain of appellant's failure in this regard. If they had full knowledge of the means by which water was to be supplied, and voluntarily assented thereto, they could not hold appellant responsible for their failure to assert their legal rights under the contract.

[5] Again, there was some evidence to the effect that appellee Jacobs visited Roswell and made an independent investigation of the lands on the Berrendo tract. If it be true that he did examine the land in question and was given full means to ascertain all the facts, then he would be in no position to contend that he had been induced to

make the purchase by reason of false representations made to him in regard to the location and character of the land.

The law is that where a vendee undertakes to make investigation of his own, and is given full means to ascertain all the facts, and is not prevented from making the examination as full as he likes, he cannot be heard to complain because he relied upon representations of the vendor if his purchase proves unsuccessful. In Page on Contracts, § 123, it is said:

"If the person to whom the false statements are made did not rely on them but investigates for himself, and acts and relies on his own knowledge, no fraud exists, if the falsity of such representations was or could be discovered thereby, and if no artifice was resorted to to prevent him from discovering the truth."

There is a question of fact in the case, however, as to whether appellees made a thorough investigation of the land in question and relied upon such investigation. This question, however, can be determined by the jury under proper instructions of the court.

[6] The only remaining point to be mentioned is alleged error by the court in giving paragraph 8 of its instructions to the jury. In this paragraph of the instructions, the court charged that, if the jury found that any one of the alleged false representations was made as alleged in the counterclaim, then the appellees would be entitled to the same relief as if all had been made and relied on as charged. This was clearly erroneous, in view of the fact that the defendants were claiming a certain sum by reason of the damages sustained by the alleged false representations that the land would not overflow, and also another certain amount suffered by reason of their relying on the alleged representations that the land would be easily irrigated. Under this instruction the jury was required to bring in a verdict for the defendant for the same amount if they found any one of the representations which had been made was false, regardless of the fact whether they found that the damages set out in the counterclaim under the various elements had been suffered or not. For example, certain of the lands were claimed to have been

damaged by reason of being subject to overflow, possibly some five or six acres. Certainly, if this were not established to be true, appellant would not be entitled to recover, and that element should have been eliminated from the case. For the reasons stated, the judgment will be reversed, and the cause remanded for further proceedings and it is so ordered.

HANNA, C. J., and PARKER, J., concur.

