179 P.2d 998

**FREAR v. ROBERTS et al.**

**No. 5012.**

Supreme Court of New Mexico.

April 23, 1947.

James A. Hall, of Clovis, for appellants.

Robert V. Wollard, of Santa Fe, for appellee.

McGHEE, Justice.

This is an appeal from a decree cancelling a deed executed and delivered on condition the property conveyed would not be used for business purposes. We will refer to the parties as they appeared below.

The only question presented is whether the quantum of proof is sufficient to sustain findings of fact and the judgment in a case of fraud. The findings of fact are as follows: "1. That Lot 6, block 23, of the Original Townsite of Clovis, is located in a residential district, on Gidding Street, in the City of Clovis, New Mexico.

"2. That the plaintiff, E. J. Frear, is the owner of, and resides upon a lot adjacent to said lot 6, block 23, and in order to prevent the construction of a business establishment of any kind upon said lot 6, purchased the same.

"3. That the said plaintiff, E. J. Frear, thereafter listed said lot 6, block 23, for sale as residential property with William N. Nelson, a real estate broker of Clovis, New Mexico; and that said real estate broker then caused a sales contract to be negotiated for the sale of said lot 6 to the defendant, M. C. Roberts, as residential property.

"4. That said sales contract rested partly in writing and partly in parol; that in addition to said written portion, the defendant, with the intention to deceive the plaintiff, fraudulently represented to the plaintiff, as an inducement for the plaintiff to enter into said contract, that said defendant was then purchasing said lot 6 for the purpose of building an apartment house or duplex of residential type thereon, and that said lot 6 would never be used for business purposes in any manner.

"5. That the defendant, M. C. Roberts, when making said oral representations to the plaintiff, did not have the present intention to perform said contract.

"6. That plaintiff, relying upon said representations and being deceived thereby, was induced to enter into said sales contract and to deliver a deed to said lot 6 to the defendant, M. C. Roberts.

"7. That, relying upon the fraudulent representations of the defendant, M. C. Roberts, as aforesaid, and being deceived thereby, the plaintiff has been materially injured.

"8. That shortly after delivery of the deed by the plaintiff to the defendant to said lot 6, the defendant entered into a sales contract therefor with the Southern Union Gas Company to purchase the same to be used for business purposes.

"9. That the defendant, M. C. Roberts, in violation of the terms of said contract, now threatens to use said lot 6 for establishment of a business building thereon, and unless restrained by the Court, will do so.

"10. That the construction of a business building on said lot 6 would irreparably in-

jure the plaintiff in the use and occupancy of his residential property adjacent to said lot 6, upon which he now resides, for which injury plaintiff has no adequate remedy at law.

"11. That when plaintiff learned the real purpose for which the defendant 'purchased said lot 6, a proper tender was made by the plaintiff to the defendant of the purchase price therefor, which was refused by the defendant."

▌ In Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 300, 168 P. 483, 486, we approved and here reaffirm as the correct rule on the quantum of proof required to establish fraud the following from Smith on Fraud, par. 264, and Redwood v. Rogers, 105 Va. 155, 53 S.E. 6: "Where it is sought to recover for fraudulent representations in regard to the sale of land, there should be the clearest proof of the fraudulent representations, and the evidence must show that the contract was founded upon them." Smith on Fraud, supra.

"The charge of fraud is one easily made, and the burden is upon the party alleging it to establish its existence, not by doubtful and inconclusive evidence, but clearly and conclusively. Fraud cannot be presumed. It must be proved by clear and satisfactory evidence. It is true that fraud need not be proved by positive and direct evidence, but may be established by facts and circumstances sufficient to support the con-clusion of fraud. But whether it be shown by direct and positive evidence, or established by circumstances, the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge."

▌ With this rule in mind we examine the record and quote therefrom the following:

"Q. Now, Mr. Frear, what conversation took place, if any, between you and Mr. Roberts? A. I told him * * * that is, I told Mr. Roberts, that I had bought the property for the protection of my home on the corner there, and if he bought it we didn't want anything on there but residence property. Mr. Roberts said that would be alright; that he would put up residential property only, and he said he would like to put up an apartment house on it."

And on cross-examination:

"Q. You told him you didn't want a filling station on there, is that right? A. I told him I didn't want a filling station; I told him I didn't want any business property on it.

"Q. He told you he wouldn't put a filling station there? A. He told me he would put an apartment house on the lot.

"Q. You were really interested in a filling station because of the fact there was one two blocks below you, or just beyond the Baptist Church, isn't that right? A.

No. I didn't want business property there. Gidding street is not a business street.

"Q. You are sure you didn't want business property? A. Yes."

And on cross-examination:

"Q. Without repeating the conversation, was it (the lot) listed for sale with him (Nelson) as residential property? (Bracketed words added.) A. Yes sir; absolutely."

From the testimony of Mrs. Frear:

"Q. What conversation did you have, or what took place at that time, as you recall? A. The day Mr. Roberts brought the check in for $500 to hold the lot, before he presented it to my husband, I turned to my husband and said, 'Does he understand what is going to be built on the lot?' Mr. Roberts immediately answers, 'Yes, nothing but an apartment house or a duplex.'"

The real estate agent who handled the deal testified:

"Q. Did Mr. Frear have any conversation with you at the time he listed the property? A. He did.

"Q. Without repeating the conversation, was it listed for residential purposes, or for other purposes, or for all purposes? A. It was listed for residential purposes; as residential property."

* * * * * *

"Q. In your previous dealings with Mr. Roberts, before you got to the store, had you discussed with Mr. Roberts the fact that it had to be residence property? A. I did.

"Q. He was still interested? A. Yes.

* * * * * *

"Q. In your opinion, Mr. Nelson, would any type of business building to be built there, whether it was a gas station, or a grocery store, or whatever it might be; do you think it would injure your property? A. Yes, I certainly do.

"Q. Do you think it would damage Mr. Frear's property? A. Yes; definitely.

* * * * * *

"Q. I will ask you again, was there any specific mention that a gas station would be the only thing that was objectionable? A. No, Mr. Frear made it plain that he would object to anything that would be objectionable to his property. And, that was understood.

* * * * * *

"The Court: Mr. Nelson, can you not tell the Court what Mr. Frear said and what Mr. Roberts said at that time about any restrictions on business? A. Yes, he said he did not want any business building there.

"The Court: Who said that? A. Mr. Frear. I believe this came up; he wanted it understood before he accepted the check, that he did not want anything there that would interfere with his residence.

"The Court: Now, who said that? A. Mr. Frear.

"The Court: Mr. Frear said that. Was there any response to that? A. Probably that it would be alright.

"The Court: Don't you remember if there was any response to that? A. I can't tell you the exact words but, 'that will be alright,' or 'That is ok' or something along that order."

The defendant Roberts testified that the only promise on his part was that if he constructed a building on the lot it would not be a filling station, but says he told Frear, Mrs. Frear and Nelson that he was buying the lot as an investment and for speculation. In this he is corroborated by a Mr. Mills, who was present in the plaintiff's store at the time of the closing of the deal. Mills had sold grain to the defendant. He had also pastured and fed his cattle one winter.

There was some delay in the delivery of the deed and shortly thereafter the defendant contracted a sale of the lot at a profit of $2,300 to a purchaser who intended to construct a business building on the lot. On the filing of this action the purchaser withdrew from the contract.

The testimony introduced by plaintiff must have been believed by the trial court, and, if so, it is sufficient to meet the rule approved in Berrendo Irrigated Farms Co. v. Jacobs, supra.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN and SADler, JJ., concur.

COMPTON, J., having heard argument in court below, did not participate.